IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

--------------------------

No. 00-30057

Summary Calendar

--------------------------

MARGERITE MYRICK REED,

                                        Plaintiff-Appellant,

                        versus

PETROLEUM HELICOPTERS, INC.,

                                        Defendant-Appellee.

--------------------------

Appeal from the United States District Court
For the Western District of Louisiana
--------------------------
July 24, 2000

Before HIGGINBOTHAM, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:

    Margerite Myrick Reed appeals the summary judgment dismissal of her employment discrimination claims against Petroleum Helicopters, Inc.  For the following reasons, we AFFIRM.


                                I

    Reed began work at PHI as an offshore helicopter pilot in 1981.  She suffered a work related back injury in 1986, but returned to work in early 1987.  In January 1994, she dislocated her shoulder in an off-the-job injury and took a leave of absence.  In May 1994, she submitted a letter from Dr. Duke Harris, indicating that she could fly but only in a two-pilot aircraft.

FAA and PHI regulations require that all pilots must be able to fly their aircraft on their own, without depending on another pilot. Consequently, Edward Gatza, Vice President of Human Resources, advised Reed that Dr. Harris's restrictions were unacceptable. Reed was informed that once she produced a valid airmen's medical certificate, she could return to work.

Dr. Harris removed his work restrictions in December 1994 and Reed produced a valid airmen's medical certificate in January 1995. She returned to work flying helicopters until March 1995 when she went on medical leave because of back pain, high blood pressure, and the flu. Because Reed's prior injuries had exhausted her leave under PHI's leave policy, Reed was placed on leave under the Family and Medical Leave Act. She was advised that this leave would expire on June 2, 1995.

On June 2, 1995, Reed's employment with PHI was terminated.[1] On June 14, 1995, Reed's physician Dr. Alberty reported that Reed was unable to work and on June 20, 1995, Dr. Alberty reported that Reed was still experiencing recurrent lumbar pain and that she was "at risk as far as flying was concerned." He repeated this opinion on July 5, 1995.

Given her condition, Reed applied for disability benefits from ITT Hartford as well as the Social Security Administration. In the ITT Hartford application, filed in June 1995, Dr. Alberty verified that Reed had "severe back pain" dating back to January 1994 and indicated that Reed was incapable of flying.

---

[1] Reed claims that she called PHI on June 2, 1995 and was told that her piloting job was unavailable. She told them she could "handle anything," but they refused to rehire her in another capacity. Reed admitted in her deposition that she was happy her old job was unavailable since she did not believe she could perform it. More importantly, Reed does not allege that a vacant position existed for which she was qualified when she was terminated on June 2, 1995.

In Reed's SSDI application, filed in April 1996, she indicated that she was unable to work because of her "disabling condition." This application was denied. In September 1996, Reed requested reconsideration and stated that she was "totally disabled and unable to work." In her Social Security Supplemental Interview Outline, filed in October 1996, Reed stated that she could not sit, stand or walk for long periods or perform basic household chores. She also stated she was unable to drive, walk for exercise, or use public transportation because her back was so unstable that it made her "totally unpredictable." She also declared that she could not perform "all of the physical demands necessary to fly a helicopter."

In November 1996, Reed filed the present lawsuit under the ADA and Louisiana Employment Discrimination Law, alleging that she was "able to perform the essential functions of her position with reasonable accommodation." In May 1997, Reed testified in her deposition that she had "no problem flying" or sitting for long periods or time. She stipulated, however, that she was medically unable to perform her job from April 10, 1994 through January 9, 1995, and from March 10, 1995 through June 1, 1995.

On May 12, 1997, Reed applied for and received an airmen's medical certificate. Later that month, however, she completed a "Pre-Hearing Memorandum" to SSDI in which she stated that she was unable to "sit, stand, and walk for long periods of time" Then, in July 1997, a Social Security Administration ALJ awarded Reed benefits retroactive to February 28, 1994.

On December 17, 1999, the district court dismissed Reed's case in its entirety because Reed could not establish that she could perform the essential functions of her job nor could she reconcile

her many contradictory statements related to her physical condition.

## II

An ADA plaintiff must establish that she is a qualified individual with a disability. She must be able to perform the essential functions of her job with or without reasonable accommodation.[2]

Reed argues that summary judgment was improper under the Supreme Court's recent holding in Cleveland v. Policy Management Systems,[3] which allowed that claims for disability benefits do not necessarily preclude the assertion that an individual is a qualified individual with a disability under the ADA. Instead, the Court recognized that a sworn representation of "total disability" may be a legal conclusion and thus differ from a purely factual statement.[4] Nevertheless, the Court acknowledged that such sworn statements which superficially appear to negate an essential element of the ADA case must be explained by the plaintiff.[5]

Along these lines, Reed contends that her prior sworn statements in her disability applications were only legal conclusions and did not take into account the prospect of accommodation as contemplated under the ADA. According to Reed, her back and shoulder injuries prevented her from lifting equipment or performing certain maintenance work, but those tasks were not

---

[2]See Hypes v. First Commerce Corp., 134 F.3d 721, 727 (5th Cir. 1998).

[3]119 S. Ct. 1597 (1999).

[4]See id. at 1601.

[5]See id.

essential functions of her job despite the fact that PHI required her to do them and would not assign someone else to do those tasks. Consequently, a claim of "total disability" in her application for disability benefits should not preclude her assertion that she can perform the essential functions of her job had reasonable accommodations been made.

Reed's general claims of disability may not be irreconcilable with the contentions of her current lawsuit insofar as reasonable accommodations are concerned. However, Reed also made specific factual statements which are inconsistent with her claim that she could fly a helicopter, an essential function of her job, and she does not dispute that the only reasonable accommodation for an inability to fly is to be placed on temporary leave. Thus, Reed's sworn statements that she could not sit for extended periods of time and that her back problems made her "totally unpredictable" were properly considered in determining that Reed could not fly a helicopter or obtain a valid airmen's certificate.[6]

In an attempt to explain these factual inconsistencies, Reed notes that English is not her first language. Yet Reed gives no explanation as to how this resolves any of the contradictions inherent in these simple factual claims. Nor does Reed explain her

---

[6]Similarly, since Cleveland other circuits have applied judicial estoppel when a plaintiff's inconsistent statements are factual and contradict a claim of qualified status under the ADA. See, e.g., Mitchell v. Washington Central Sch. Dist., 190 F.3d 1 (2d Cir. 1999); Motley v. New Jersey State Police, 196 F.3d 160 (3d Cir. 1999); Feldman v. American Memorial Life Ins. Co., 196 F.3d 783, 792 (7th Cir. 1999).

Reed's citation of Parker v. Columbia Pictures Industries, 204 F.3d 326 (2d Cir. 200), is unavailing. The plaintiff in Parker was a video technician who previously stated that he had problems sitting and standing for sustained periods of time. Id. at 334. However, he presented evidence that he could perform the essential functions of his job with accommodations such as part-time status or home employment. Id. at 331, 334-36. Reed however presented no evidence that any reasonable accommodation would have enabled her to be able to fly during the periods in which she was on leave.

physician's assessment that she was not safe to fly during the periods when she was on leave or immediately after her termination. Reed argues only that her prior sworn statements in applications for disability benefits did not take into account reasonable accommodations for her position. Reed gives no explanation as to how her statements were consistent with her claim that she could safely fly a helicopter, pass the necessary physical exams, and obtain the required certification, with or without other accommodations.

Moreover, these factual inconsistencies which Reed created after her termination are not the only problem with her case. Simply put, Reed presents no evidence sufficient to create a genuine question of material fact regarding whether she could safely fly a helicopter during any of the time when she was placed on leave by the employer or during the time immediately after her federal leave expired on June 2, 1995, because Reed <u>stipulated</u> without qualification[7] that from April 10, 1994 to January 9, 1995, she was medically unable to perform the duties of her job. She also stipulated that her physical condition mandated a leave of absence from March 10, 1995 through June 1, 1995.[8]

It is irrelevant that Reed's stipulation does not cover June 2, 1995, the day her FMLA leave expired and the day she was terminated, since Reed presents no affirmative evidence that she was able to function as a pilot on June 2. Further, no such

---

[7]Specifically, Reed did not qualify her stipulation with regard to the availability of any reasonable accommodations.

[8]In fact, her medical condition in March 1995 effectively revoked her flight certification, thus requiring Reed to obtain an airmen's medical certificate at some point in the future. Reed, however, did not obtain such certification until May 12, 1997, nearly two years after she was terminated.

inference is allowable given that her physician stated that she could not work or remained a risk as far as flying was concerned on June 14, June 20, and July 5.

Thus, even if Reed's inconsistent statements compel a conclusion that Reed was unqualified for her job after her termination, summary judgment was appropriate primarily because Reed provided no evidence that she could perform an essential function of her job, namely flying, with any reasonable accommodation, whenever she was on leave or when she was terminated.

Moreover, Reed makes no argument that her employer had any duty to retain her after she exhausted 9 months of company leave, all of her vacation time, and 12 weeks of leave under the FMLA. Specifically, Reed does not argue that PHI should have accommodated her by placing her on indefinite leave whenever she was unable to fly. Courts confronted with that request routinely deny the reasonableness of such accommodations. See, e.g., Rogers v. International Marine Terminals, Inc., 87 F.3d 755, 759 (5th Cir. 1996) (citing Myers v. Hose, 50 F.3d 278, 280, 283 (4th Cir. 1995)). Thus, Reed's termination was not wrongful.

AFFIRMED.