**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 8, 2005**

**Charles R. Fulbruge III**
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 04-50563

HAVEN McCLAREN,

Plaintiff-Appellant,

VERSUS

MORRISON MANAGEMENT SPECIALISTS, INC.,

Defendant-Appellee.

Appeal from the United States District Court
For the Western District of Texas

Before JOLLY, SMITH, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Plaintiff-Appellant Haven McClaren filed suit against Defendant-Appellee Morrison Management Specialists, Inc. ("Morrison"), alleging that Morrison failed to hire him for a newly created position after Morrison eliminated McClaren's original position with the company, in violation of the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE ANN. § 21.051. After a jury awarded McClaren compensatory and punitive damages on his age discrimination claim, Morrison filed a Rule 50 motion for judgment as a matter of law. The district court denied Morrison's motion

and entered judgment on the verdict.  Morrison subsequently reurged its Rule 50 motion, which the district court granted.  The district court found that McClaren was judicially estopped from establishing a prima facie case of age discrimination because of inconsistent statements he made in an effort to obtain disability benefits.  The district court entered judgment for Morrison, and McClaren timely appealed.  For the reasons discussed below, we affirm.

**BACKGROUND AND PROCEDURAL HISTORY**

McClaren was hired on April 11, 1988, by Tenet Health Care System Medical, Inc. ("Tenet") to manage the food services unit of a hospital in El Paso, Texas.  McClaren worked in that capacity at Sierra Medical Center ("Sierra") until 1992, when he was promoted to Director of Food and Nutrition.  As Director, McClaren's duties included supervision of employees, designation of the menu, and management of the financial aspects of the food services unit.

Throughout his career, including prior to his arrival at Sierra, McClaren suffered from back and other health problems.  In 1996, while at Sierra, he slipped, fell, and sustained a serious back injury requiring two surgeries.  McClaren subsequently filed a worker's compensation claim against Tenet.  Tenet and McClaren settled the claim, with Tenet agreeing to pay for McClaren's medical treatment and pain medication.  McClaren continued to receive medical treatment related to the injury from his slip and fall through 2000, and during this time his doctor continued to

file reports with the Texas Workers' Compensation Committee.[1]

In February 2000, Tenet agreed that Morrison would assume responsibility for food services at three Tenet-affiliated hospitals in the El Paso area, including Sierra. Per this agreement, Morrison retained all of Tenet's hospital employees for at least 90 days. On May 10, 2000, McClaren learned that his position would be eliminated by Morrison as of June 12, 2000. Morrison explains that this restructuring of management was due to its desire to place all three El Paso area hospitals under one Director of Food and Nutrition, rather than staffing a Director at each location. A new position of Assistant Director, with a lower salary, was created that approximated McClaren's position at Sierra. According to Morrison, it planned to create a new management structure: two Assistant Director positions at the two smaller hospitals (including Sierra) that would report to the Director residing at the largest area hospital. McClaren applied for the new Assistant Director position at Sierra and interviewed for the position on May 31, 2000. He was told a decision would be made before June 12, 2000. At the time he applied and was

---

[1]The physician reports filed with the Texas Workers' Compensation Committee show that from October 19, 2000, through November 11, 2002, McClaren's physician continually restricted him from work, indicating on the forms that McClaren's back injury prevented him from all work. As of March 15, 2001, the reports indicate that the "no work" restriction was permanent. None of these reports, however, bears upon the determination of his disability for purposes of Social Security Disability Insurance benefits, and none reflects an inability to work at the time relevant to Morrison's decision not to hire McClaren.

considered, McClaren was 63 years old. Morrison did not hire McClaren as the Assistant Director, but instead hired Martin King, a man who had been employed by Tenet and who previously reported to McClaren. King was, at the time, 47 years old.

McClaren learned of Morrison's decision to hire King through another employee without the knowledge of Morrison management. King also confirmed his new employment directly with McClaren, unbeknownst to Morrison. After learning of Morrison's decision, but without communicating with Morrison, McClaren visited his doctor, Dr. Wehrle, on June 6, 2000. There, the doctor explained that McClaren's back injuries and pain presented him with two treatment options: an additional series of steroid injections or back surgery. McClaren complained to Dr. Wehrle that on that day he suffered from "intractable" back pain, and the doctor's notes reflect persistent "significant" back pain since November 9, 1999. At that same visit on June 6, McClaren opted for surgery and asked for a referral to a surgeon.

On June 7, 2000, McClaren filed a request for leave from Morrison under the Family Medical Leave Act. The request for leave form asked for McClaren's date of anticipated return to work, to which McClaren answered, "N/A." On June 8, 2000, McClaren packed his personal belongings at work and left voicemail messages for his supervisors explaining his decision to take sick leave. On June 14, 2000, McClaren filed for retirement benefits from the Social Security Administration ("SSA"). Two days later, Morrison mailed

4

McClaren a termination letter explaining that it had not hired him as Assistant Director and notifying him that his last day of employment with Morrison was June 8, 2000, but that he would be paid through June 23, 2000.

In September 2000, McClaren filed discrimination charges with the Texas Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC"), alleging that Morrison discriminated against him on the basis of age and disability, in violation of the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"), when Morrison terminated his position and failed to hire him for the Assistant Director position at Sierra.

In February 2001, McClaren filed for disability benefits with the SSA, and he received those benefits until he turned 65, at which time he began to receive retirement benefits.[2] McClaren described his disability as: diabetes, high blood pressure, hypothyroidism, atherosclerotic heart disease, rheumatoid arthritis, degenerative arthritis, and back fusion (at "L 4-5"). He also stated that those conditions caused him to make job-related

---

[2] The district court determined that McClaren's statements to the Social Security Administration ("SSA") established his disability onset as of June 6, 2000. Specifically, McClaren stated in his disability submissions to the SSA that he became unable to work because of his illnesses, injuries, or conditions on June 8, 2001. This statement, however, is in error because the same submission was signed and dated on January 27, 2001. McClaren also stated that he stopped working on June 8, 2001, while other evidence, and both parties' briefs, supports a finding that he stopped working on June 8, 2000.

5

changes, including "modified job, reasonable accommodations, and special parking." McClaren claimed to the SSA he stopped working based on Dr. Wehrle's diagnosis that McClaren was "unable to work while taking pain medications, muscle relaxers," and because "Employer Morrison changed job restrictions."

The EEOC issued a right to sue letter, and McClaren filed multiple claims against Morrison in Texas state court. McClaren's original petition stated only a claim of age discrimination against Morrison.[3] Upon removal to federal court on the basis of diversity jurisdiction, Morrison filed a motion for summary judgment that was subsequently denied. The case proceeded to trial before a jury, which ultimately awarded McClaren damages. After reducing the jury's award, the district court entered final judgment. Morrison moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), arguing that McClaren was judicially estopped from establishing a prima facie case of age discrimination in light of his statements to the SSA regarding his eligibility for disability benefits. Morrison further contended even if a prima facie case existed, McClaren failed to demonstrate that Morrison's proffered

---

[3]The district court's opinion implies McClaren's claim as alleged in his petition arose under the ADEA, but then quotes a portion of the petition that refers only to Texas mandates proscribing age discrimination in employment. *See* TEX. LAB. CODE ANN. § 21.051. Also, the district court and the parties' briefs on appeal characterize Morrison's removal of the action as grounded in diversity jurisdiction alone. Thus, no federal claim was ever stated under the ADEA, but rather McClaren stated only a Texas state law claim of age discrimination with diversity jurisdiction as the proper vehicle for removal.

reason for not hiring McClaren was pretext for discrimination.

Noting that the Fifth Circuit had yet to address the question of judicial estoppel in the context of a state law age discrimination claim made in light of statements supporting a claim for social security disability benefits, the district court held that McClaren was estopped from making a prima facie claim and granted Morrison's motion for judgment as a matter of law. The district court did not reach whether, if a prima facie case had been met, McClaren demonstrated that Morrison's proffered reason for termination was pretext. McClaren timely filed the instant appeal.

### DISCUSSION

A district court's grant of judgment as a matter of law is reviewed de novo. Hamburger v. State Farm Mut. Auto. Ins. Co., 361 F.3d 875, 884 (5th Cir. 2004). Under Rule 50, judgment as a matter law should be granted only where "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." FED. R. CIV. P. 50(a)(1); Ellis v. Wealser Eng'g Inc., 258 F.3d 326, 337 (5th Cir. 2001). In reviewing the grant of a judgment as a matter of law after a jury verdict, special deference is given to the jury's verdict. Coffel v. Stryker Corp., 284 F.3d 625, 630 (5th Cir. 2002) (citing Brown v. Bryan County, Okla., 219 F.3d 450, 456 (5th Cir. 2000)).

**I. Whether McClaren is judicially estopped from making a prima facie case of age discrimination.**

7

At primary issue in this appeal is whether McClaren is judicially estopped from claiming he was qualified for purposes of his age discrimination claim, even though he applied for and received Social Security Disability Insurance ("SSDI") program benefits as one who is disabled and unable to perform his past relevant work. In other words, we must decide whether McClaren's claims of qualification and disability are sufficiently inconsistent to preclude his age discrimination claim on the basis of judicial estoppel.

Morrison argues that McClaren cannot prevail on his age discrimination claim because the two claims are inconsistent and McClaren has failed to sufficiently explain the inconsistencies. McClaren argues he adequately explained that his disability claim does not preclude his discrimination claim because, at the time he was terminated, he was not disabled and was qualified for his job. According to McClaren, he later became disabled due to a worsening condition and due to his choice of medical treatment and, for that reason, became eligible for disability benefits after his termination. He claims that he only chose surgery because he knew Morrison did not hire him for the Assistant Director position and that he would have chosen additional steroid injections if he had the option of continuing to work.

Under the TCHRA, an employer may not "fail[] or refuse[] to hire an individual, discharge[] an individual, or discriminate[] in any other manner against an individual in connection with

8

compensation or the terms, conditions, or privileges of employment"
on the basis of age. TEX. LAB. CODE ANN. § 21.051(1). "Section
21.051 is substantively identical to its federal equivalent in
Title VII, with the exception that" federal law makes age
discrimination unlawful under the ADEA. Quantum Chem. Corp. v.
Toennies, 47 S.W.3d 473, 475 (Tex. 2001); see also Jaso v. Travis
County Juvenile Bd., 6 S.W.3d 324, 328 (Tex. App.-Austin 1999, no
pet.).[4]

In order to establish a prima facie case of age discrimination
under the TCHRA in a non-selection or failure to hire case,
McClaren must show that: (1) he was in the protected class;[5] (2) he
was qualified for the position sought; (3) he was not selected; and
(4) he was either (a) replaced by another person outside of the
protected class; (b) replaced by someone younger;[6] or (c) otherwise
not selected because of age. See Machinchick v. PB Power, Inc., 398

---

[4]Texas's provision for age discrimination claims, TEX. LAB.
CODE ANN. §§ 21.001-.556, was designed in part to bring Texas "in
line with federal laws addressing discrimination." Specialty
Retailers, Inc. v. DeMoranville, 933 S.W.2d 490, 492 (Tex. 1996).

[5]Under the ADEA and TCHRA, an age discrimination plaintiff
must establish that he was over the age of 40 at the time of the
non-selection in order to prove he was a member of the protected
class. Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir.
2001); Russo v. Smith Int'l, Inc., 93 S.W.3d 428 (Tex. App.-
Houston [14th Dist.] 2002, pet. ref'd).

[6]At the time of his hiring, Martin King was 47 years old.
The parties do not dispute the age difference satisfies the
requirement that King was "significantly younger" than McClaren.
See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313
(1996); Rachid v. Jack in the Box, Inc., 376 F.3d 305, 313 (5th
Cir. 2004).

9

F.3d 345, 350 (5th Cir. 2005) (citing <u>Rachid v. Jack in the Box, Inc.</u>, 376 F.3d 305, 309 (5th Cir. 2004) (stating prima facie requirements in a discharge, rather than failure to hire, case)); <u>see</u> <u>also</u> <u>Blow v. City of San Antonio</u>, 236 F.3d 293, 296 (5th Cir. 2001) (providing elements in a Title VII failure to promote case). Before the district court and now on appeal, Morrison maintains McClaren is unable to show that he was qualified for the Assistant Director position he sought.

Morrison argued in its Rule 50 motion that McClaren is judicially estopped from showing he is qualified — and therefore precluded from making his discrimination claim — because McClaren averred to the SSA he was disabled and unable to perform his prior relevant work in order to receive SSDI benefits.[7] Observing the lack of Fifth Circuit precedent on the issue, the district court relied on United States Supreme Court, Third Circuit, and Texas case law in granting Morrison's Rule 50 motion. Specifically, the district court held McClaren's averment of disability and inability to perform his job "as of June 6, 2000," (that is, two days prior to his termination) judicially estopped him from subsequently

_____

[7]The SSA defines "disability" as an "inability to engage in any substantial gainful activity by reason of any . . . physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that [a claimant] is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work . . . in the national economy." 42 U.S.C. § 423(d)(2)(A); *see also* 45 C.F.R. § 404.1529(a).

claiming he was qualified for the Assistant Director position that was denied him on June 8, 2000.

In Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999), the Supreme Court addressed whether a plaintiff who claims both to be "totally disabled" for purposes of receiving SSDI benefits and "qualified" for employment under the ADA is judicially estopped from bringing his ADA claim. As a preliminary matter, the Supreme Court first observed that to make a prima facie case of disability discrimination under the ADA, a plaintiff must first demonstrate he is qualified for the position in question; and in order to receive SSDI benefits, a claimant must make a showing of a disability. Id. at 806. Although apparently incompatible, the Court concluded these two statuses may nevertheless co-exist as to one claimant, observing that a claimant for SSDI benefits is not per se precluded from making a showing of qualification for purposes of setting out a prima facie case of disability discrimination. Id. at 797-98.

In such a case, to survive judgment for the employer, a plaintiff must address the apparent inconsistency between "qualified" for employment under the ADA and "disabled" for SSDI benefits. Id. at 798, 806 (holding that "ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim"). A plaintiff's explanation of the apparent inconsistency must be "sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the

11

plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless perform the essential functions of her job, with or without reasonable accommodation." Id. at 807 (internal quotation marks omitted). If a plaintiff fails to explain the inconsistency between his qualification and disability, or if the explanation is insufficient, then his ADA claim is judicially estopped by his earlier statements regarding disability. Id.

Although the Cleveland Court did not address the application of judicial estoppel to an ADEA or, as here, a state law age discrimination claim asserted after a plaintiff has filed for SSDI benefits, we find the reasoning employed therein persuasive to the precise issue before this court and, for the first time, this Circuit. We also observe that at least one other circuit court and district court have applied Cleveland's analysis to a discrimination claim brought under the ADEA. Detz v. Greiner Indus. Inc., 346 F.3d 109, 120-21 (3d Cir. 2003) (holding plaintiff judicially estopped from establishing ADEA claim where attempt to explain the inconsistency between disabled and qualified consisted only of argument that his termination rendered him "unable to work"); Johnson v. Exxon Mobil Corp., No. 02-C-5003, 2004 WL 419897, at *5 (N.D. Ill. Feb. 2, 2004) (unpublished opinion) (holding plaintiff judicially estopped from establishing he was qualified for purposes of age discrimination claim because plaintiff could not resolve the inconsistency between his

12

disability and his qualification by simply disavowing elements of his claims to the former).

Here, McClaren's age discrimination claim arises under the TCHRA rather than the ADEA, but as noted previously, this distinction does not prevent our application of the Cleveland analysis because the TCHRA parallels federal discrimination laws. Specialty Retailers, 933 S.W.2d at 492. Moreover, at least one Texas court of appeals has applied Cleveland's judicial estoppel analysis to a joint sex and disability discrimination claim. See Johnson v. Hoechst Celanese Corp., 127 S.W.3d 875, 880-82 (Tex. App.-Corpus Christi 2004, pet. ref'd).[8]

Having concluded the Supreme Court's analysis in Cleveland applies to the age discrimination claim before this Court, we must first address whether there is a genuine conflict between McClaren's statements to the SSA and his claim under the TCHRA. McClaren submitted documentation to the SSA detailing how he was

---

[8] Morrison argues McClaren should not be entitled to the Cleveland two-part analysis because McClaren chose not to pursue an ADA claim, even though based upon his EEOC filings, he might have done so. Morrison argues the panel should instead, on this record, rely on the Fourth Circuit's judicial estoppel analysis in a pre-Cleveland case. See King v. Herbert J. Thomas Mem'l Hosp., 159 F.3d 192, 196-98 (4th Cir. 1998) (addressing judicial estoppel in an age discrimination claim filed after an application for disability benefits).

Morrison's argument is unconvincing. The Fourth Circuit's analysis in King provides no specific reason for its application to a claim of age discrimination, as opposed to a disability discrimination claim, and this Circuit has recognized that Cleveland altered the relevant judicial estoppel analysis. See generally Holtzclaw v. DSC Communications Corp., 255 F.3d 254, 257-59 (5th Cir. 2001).

13

entitled to SSDI benefits based on various maladies, including "pain lower back, chest pain, fatigue, weakness, obesity, high blood pressure, neropathy [sic] both legs feet, dizziness, sleeplessness, diabetes, hycholesterol [sic]." Further, McClaren averred to the SSA that these symptoms were "constant" and precluded him from performing many of the essential functions of life. Alternatively, in support of his TCHRA complaint, McClaren represented to the district court (and the jury) that he would have been able to perform the duties associated with the Assistant Director position. We conclude the two positions taken by McClaren are facially inconsistent.

Nevertheless, under <u>Cleveland</u>, McClaren is entitled to proffer an explanation for this inconsistency, which, if sufficient, would require this court to reverse the district court's grant of judgment as a matter of law. McClaren points to several pieces of evidence in the record that he maintains established he was qualified for the position of Assistant Director, despite his allegedly disabling injuries: (1) his own testimony revealing he was physically able to work in May 2000, at the time of his application for the Assistant Director position; (2) testimony from Morrison representatives indicating the failure to hire McClaren was not due to his health or physical condition; (3) the fact that McClaren never requested an accommodation for his back injury; and (4) McClaren's testimony that if Morrison had offered McClaren the position at issue, he would have accepted and continued working,

14

choosing a less invasive medical treatment for his back pain than the back surgery he elected after Morrison did not hire him.

Also, McClaren argues his disability would not have occurred but for Morrison's failure to hire. In making this argument, he casts his disability as the surgical spinal fusion, rather than the years of back pain due to injury, and urges that, had Morrison hired him, he would have continued steroid injections. Record evidence supports that this treatment choice was available to McClaren on June 6, 2000. While McClaren worked for Morrison, he received steroid injections in order to continue to be able to work. He argues he would have continued steroid injections as Assistant Director but that, when he learned he did not get the position, he chose the surgery which ultimately led to his disability. Morrison responds that McClaren's explanation of treatment choice is insufficient under <u>Cleveland</u> because McClaren never testified at trial that the surgery alone rendered him disabled nor did he make any such representation in his brief or to the SSA. Morrison argues that McClaren's only relevant testimony was that he was willing to work and would have done so despite his condition.

The district court's application of <u>Cleveland</u> to the instant facts was based upon: (1) the timing of McClaren's various statements and conduct; and (2) its determination that McClaren simply disavowed his disability claim, rather than sufficiently explaining the inconsistency between the two positions. As to

timing, the court was persuaded that McClaren's submissions to the SSA established his "total disability" as beginning two days prior to his termination by Morrison.[9]  In evaluating the sufficiency of McClaren's explanation, the district court compared McClaren to the plaintiffs in Detz and Johnson.

In Detz, the plaintiff, upon being terminated from his employment, applied for disability benefits and later filed claims against his former employer under both the ADEA and the parallel Pennsylvania statute for age discrimination.  Detz, 346 F.3d at 111.  Detz explained he was qualified in spite of a disability because it was the layoff itself that rendered him unable to work. Id. at 119-20.  The Third Circuit deemed Detz's argument as less an explanation of how legal statuses could factually co-exist in his case and, instead, more akin to a disavowal of statements made in connection with his application for disability benefits.  Id. at 120.  Thus, the court concluded that Detz was judicially estopped from pursuing his ADEA claim.  Id. at 120-21.

Similarly, in Johnson, the plaintiff attempted to explain the

_____

[9]The district court notes the latter date as the date of termination, June 8, 2000, but Morrison briefs a more substantial gap in time.  Morrison explains that McClaren claimed disability as of June 6, 2000, but the hiring decision was not made by Morrison until June 10, 2000.  Morrison argues June 6, 2000, constitutes the date of disability because on that date Dr. Wehrle diagnosed McClaren as totally disabled.  McClaren points to SSA submissions that he was disabled as of June 8.  Regardless of whether he was disabled on June 6 or 8, McClaren cannot, based upon the specificity of his submissions to the SSA, also claim to be qualified as of June 8.

16

inconsistency between his disability and his ADEA claim by maintaining he was willing to work and would have done so despite a disability. Johnson, 2004 WL 419897, at *4. The court found Johnson succeeded only in disavowing his early disability statements and failed to sufficiently explain the inconsistency. Id. at *4-5. Accordingly, the court held him judicially estopped from stating his discrimination claim. Id. at *5.

Here, as in Detz and Johnson, McClaren urges only that he "would have been willing to work" and would have done so despite his sworn statements to the SSA that he was incapable of working at the relevant time. Therefore, the district court concluded that McClaren's explanation was no more than a disavowal of his previous statements related to disability claims to the SSA. McClaren maintains that his case differs from Detz and Johnson in that the briefs reveal an inconsistency regarding the dates upon which McClaren acted in relevant part. In other words, McClaren argues that there exists a disagreement about the date upon which Morrison notified McClaren of its decision not to hire him. Based on this disagreement, McClaren contends his statement of total disability and inability to work as of June 6, 2000, is not inconsistent with his age discrimination claim. McClaren's argument is unpersuasive.

McClaren cannot overcome the fact that his submissions to the SSA contained more than legal statements of disability related to the spinal fusion, which he claims he would not have had if Morrison had hired him as Assistant Director. To the contrary, his

17

disability application contains broad descriptions of his pains, injuries, health conditions, and inability to work as of June 6, 2000, a date before he was given official notice of Morrison's decision to hire King and before his official termination date with Morrison. Most pointedly, his submissions to the SSA aver that since the date of his surgery, his back symptoms improved. Essentially, McClaren argues now that Morrison's failure to hire him resulted in his surgery, which in turn resulted in a deterioration of his back pain and condition, such that he subsequently filed for disability benefits but was nevertheless qualified at the time of Morrison's decision. McClaren's position is not a sufficient explanation of the inconsistency he must reconcile, but rather is simply a disavowal of his averment to the SSA.

Both parties cite two Fifth Circuit cases addressing Cleveland's application to discrimination claims brought pursuant to the ADA, as opposed to the ADEA. See Giles v. Gen. Elec. Co., 245 F.3d 474 (5th Cir. 2001); Reed v. Petroleum Helicopters, Inc., 218 F.3d 477 (5th Cir. 2000). In Giles, a panel of this Court determined that the plaintiff was not judicially estopped from making his disability claim, where in his application for SSDI benefits he made "no specific assertions resisting his explanation that he could perform his job with reasonable accommodation." 245 F.3d at 485. In Reed, a plaintiff who received disability benefits was found to be judicially estopped from showing she was qualified

18

because she made specific, factual statements to the SSA that were fundamentally inconsistent with her ability to perform her job, with or without accommodation. 218 F.3d at 480 (holding plaintiff's statements to the SSA that she was "totally unpredictable" because she could not sit for an extended period of time could not be reconciled with the qualifications for flying a helicopter).

The compelling distinction underlying the different outcomes in Reed and Giles is the type of averments made by the plaintiffs to the SSA.[10] Thus, comparing plaintiffs through the lens provided by Cleveland, estoppel will apply in those cases, like Reed, where the plaintiff's factual descriptions supporting disability preclude the possibility of qualification as of a certain date. Not only are McClaren's statements to the SSA inconsistent with his showing of qualification on his age discrimination claim, but also the specificity of the statements renders his proffered explanation insufficient. In other words, McClaren cannot disavow his statement to the SSA that his disability includes more impairment

---

[10] Morrison argues that Giles is distinguishable from Reed and the instant case because the plaintiff in Giles did not ultimately receive SSDI benefits. Morrison urges that the failure to obtain disability benefits provides the basis for concluding that a plaintiff is not judicially estopped from asserting qualified individual status in a subsequent discrimination action. This Court has previously rejected this position, however, in Giles no less. 245 F.3d at 483-84 (finding that plaintiff's assertions to the SSA "do not operate judicially to estop him from asserting qualified individual status only because he failed to obtain benefits under SSDI").

19

than simply the fusion of his back and that his disability actually improved, rather than worsened, as a result of surgery. McClaren swore his disability onset date preceded both his termination and Morrison's official adverse employment action. Therefore, McClaren is judicially estopped from making a prima facie age discrimination claim.

## CONCLUSION

Because McClaren made signed representations to the SSA that as of June 6, 2000, he was totally disabled, unable to work, and that his disability was characterized by multiple, broad symptoms of impairment, he is judicially estopped from showing he was qualified for the position he was subsequently denied on June 8, 2000. Accordingly, because McClaren cannot make a prima facie case of age discrimination, the district court's order granting Morrison judgment as a matter of law is AFFIRMED.

**AFFIRMED.**