LIPEZ, Circuit Judge, concurring in part and dissenting in part.
Judicial estoppel is an equitable doctrine designed to safeguard courts from misuse by litigants who attempt to change positions in the expediency of the moment. Relying on that doctrine to deny plaintiff Pena an opportunity to seek a remedy before a jury for disability discrimination, my colleagues misapply the Supreme Court's decision in Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). Indeed, at the heart of Cleveland is a recognition that courts have been too quick to find a conflict between claims for Social Security Disability Insurance ("SSDI") benefits and claims alleging discrimination under the Americans with Disabilities Act ("ADA"). The Court held that a plaintiff could pursue a reasonable accommodation claim despite an earlier SSDI application asserting total disability if she provides an "explanation ... sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.' " Id. at 807, 119 S.Ct. 1597. In this case, the explanation offered by Pena could warrant that conclusion by a reasonable jury. Therefore, I respectfully dissent.[11]
I.
Pena worked at a Honeywell manufacturing facility for approximately five years, from 2008 to 2013, primarily in the respiratory department. Suffering from anxiety and depression, Pena experienced several medical issues throughout that period, and the company routinely accommodated her needs by, for example, allowing her extended time away from the job.
*34 In October 2012, after Honeywell decided to cross-train employees, Pena trained in the molding room. She took a medical leave from November 2012 to January 2013, attributed in part to her depression. Upon her return, Pena started working in the molding room for eight to twelve hours per week, where she found that the pace, noise, smell, and enclosure significantly exacerbated her symptoms. Following her complaint about the conditions in late February 2013, she was granted a temporary reprieve from working in the molding room pending further review. On March 8, 2013, she left work after her supervisor refused her request not to work there.
Then followed three months of back and forth between Honeywell, Pena's attorney, and her doctor about Pena's desire to continue working outside the molding room. She experienced worsening anxiety and stress associated with her employment uncertainty. Honeywell terminated Pena's employment on June 17, 2013 for "job abandonment."
On September 20, 2013, Pena submitted an application for SSDI benefits in which she stated, "I BECAME UNABLE TO WORK BECAUSE OF MY DISABLING CONDITION ON March 8, 2013. I AM STILL DISABLED." On April 16, 2015, Pena filed this action against Honeywell alleging disability discrimination, effectively claiming that she could work, albeit with an accommodation. Six months later, on October 16, 2015, her SSDI application was approved. Her seemingly inconsistent disability and discrimination claims generate the judicial estoppel issue before us.
II.
A. Judicial Estoppel Principles
The Supreme Court said virtually nothing in Cleveland about the substance of the doctrine of judicial estoppel, but the principles governing that doctrine are well-established. The purpose of judicial estoppel is to "safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system." Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004) (citing New Hampshire v. Maine, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) ). Although application of judicial estoppel is "not reducible to any general formula[ ]," several conditions typically drive a court's decision to apply the doctrine. New Hampshire, 532 U.S. at 750, 121 S.Ct. 1808. First, the litigant's earlier and later positions "must be clearly inconsistent." Id. (internal quotation marks omitted). Second, the estopped party must have persuaded a court to accept its prior position. Alt. Sys. Concepts, Inc., 374 F.3d at 33.[12]
In addition, the Court cautioned that judicial estoppel is an equitable doctrine, applied as an act of discretion. New Hampshire, 532 U.S. at 750, 121 S.Ct. 1808. Concerns about fairness inform the analysis. Id. at 751, 121 S.Ct. 1808 ; see also James Wm. Moore, 18 Moore's Federal Practice § 134.31 (3d ed. 2012) ("Application of the doctrine of judicial estoppel should be guided by a sense of fairness, with the facts of the particular dispute in mind."). An advantage unfairly gained by the litigant -- or a detriment unfairly imposed on the other party -- weighs in favor of estoppel. New Hampshire, 532 U.S. at 751, 121 S.Ct. 1808. Judicial estoppel thus disfavors intentional inconsistencies and provides leniency for a plaintiff who operated in good faith in presenting conflicting positions. See ids="9302102" index="113" url="https://cite.case.law/us/532/742/#p750">id. at 753, 121 S.Ct. 1808.
*35 B. The Cleveland Analysis
In Cleveland, the Court held that there is no presumption of judicial estoppel against a claim for failure to accommodate an employee's disability when the employee has already received SSDI benefits premised on the inability to work. Cleveland, 526 U.S. at 805, 119 S.Ct. 1597. The Court reasoned that "there are ... many situations in which an SSDI claim and an ADA claim can comfortably exist side by side." Id. at 802-03, 119 S.Ct. 1597. Accordingly, a plaintiff may "defeat summary judgment" if she can provide "a sufficient explanation" for her "two seemingly divergent" claims. Id. at 797, 806-07, 119 S.Ct. 1597.
Cleveland tells us that we must conduct the inconsistency analysis "assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement." Id. at 807, 119 S.Ct. 1597. This assumption binds the plaintiff to her prior assertion, establishing the contours of the conflict that the plaintiff must explain. See, e.g., Lee v. City of Salem, 259 F.3d 667, 674 (7th Cir. 2001). Although the Court in Cleveland did not prescribe the details of the inconsistency inquiry, the Court indicated that an ADA claim could not survive if there were "directly conflicting statements about purely factual matters, such as 'The light was red/green,' or 'I can/cannot raise my arm above my head.' " Cleveland, 526 U.S. at 802, 119 S.Ct. 1597. Such irreconcilable assertions of fact "present precisely the sort of threat to judicial integrity that the doctrine of judicial estoppel was designed to prevent." Bos. Gas Co. v. Century Indem. Co., 708 F.3d 254, 264 (1st Cir. 2013).
By contrast, an SSDI "representation of total disability differs from a purely factual statement in that it often implies a context-related legal conclusion, namely, 'I am disabled for the purposes of the Social Security Act.' " Cleveland, 526 U.S. at 802, 119 S.Ct. 1597. "So understood, a quasi-legal assertion of this kind does not foreclose the possibility that the individual is nonetheless 'qualified' to work for purposes of the ADA." Lee, 259 F.3d at 673. The Court's reasoning acknowledged that the two statutes reflected contrasting conceptions of disability. Enacted in 1956, the SSDI program reflects a view of disability as a certifiable medical excuse from work. For some people, disabilities impose medical obstacles to employment. Matthew Diller, Dissonant Disability Policies: The Tensions Between the Americans with Disabilities Act and Federal Disability Benefit Programs, 76 Tex. L. Rev. 1003, 1005-06 (1998). Adopted nearly forty years later, the ADA reflects the different view that a disability will not necessarily foreclose participation in the workforce. Id. The ADA thus requires employers to remove barriers, where feasible, that impede persons with disabilities from performing the essential functions of their jobs. Id.
The Cleveland Court recognized that, "in context, these two seemingly divergent statutory contentions are often consistent," such that individuals may qualify for SSDI and also remain capable of continuing in their jobs. Cleveland, 526 U.S. at 797, 119 S.Ct. 1597. In so concluding, the Court rejected the notion that an SSDI recipient who seeks ADA protection is necessarily gaining an unfair advantage by "double dipping" into two forms of financial support for disability. See Diller, Dissonant Disability Policies at 1035 (listing cases in which courts were sidetracked by double dipping before Cleveland ); Lauren Lowe, Note, What Employees Say, or What Employers Do: How Post-Cleveland Decisions Continue to Obscure Discrimination, 62 Vand. L. Rev. 1245, 1272 (2009) (listing cases after Cleveland ). While a plaintiff must do more than merely point to the difference in statutory standards for "disability,"
*36 the legal context of the two claims is essential to understanding the Cleveland inquiry. See DeCaro v. Hasbro, Inc., 580 F.3d 55, 62 (1st Cir. 2009).
III.
Applying the inconsistency analysis required by Cleveland, and guided by the principles of judicial estoppel, I disagree with the majority's conclusion that Pena's SSDI application statements "I BECAME UNABLE TO WORK BECAUSE OF MY DISABLING CONDITION ON March 8, 2013" and "I AM STILL DISABLED" contradict irreconcilably her reasonable accommodation claim, such that judicial estoppel is warranted.
A. The Prior Statement
The "previous sworn statement" at issue here actually consists of the two statements in Pena's SSDI application that she "became unable to work" on March 8, 2013 and "[is] still disabled." Cleveland instructs us to assume Pena's good-faith belief in these two prior assertions. Hence, to assess the ostensible conflict between those SSDI assertions and the particulars of her ADA reasonable accommodation claim, we have to understand how Pena explains her good-faith belief in these assertions.
Pena argues that she understood herself to have become disabled on March 8 "only after her employer denied her request for a reasonable accommodation." Her brief points to her deposition, in which she was asked for the date from which she was "no longer able to work at all." She responded, "[w]hen I was kicked out of that place." When asked if she "agree[d] that since March 8, 2013 you have been unable to perform any sort of work," she responded, "[y]es." Asked to identify the point when she "bec[a]me unable to work at all," she responded, "[t]he same moment that they denied me my job without accommodating me." Pena argues that it is essential context that this denial preceded her representation of disability because this denial framed her understanding of her situation when she sought SSDI benefits.
Her affidavit, filed as part of her opposition to Honeywell's motion for summary judgment, makes this exact point: "I did not apply for SSDI benefits until September 20, 2013, only after I had exhausted every possible effort of getting the needed accommodation." Although this affidavit is in the record, the district court dismissed its relevance, quoting Cleveland for the premise that "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." Pena v. Honeywell Int'l Inc., No. CV 15-179 WES, 2018 WL 582579, at *2 (D.R.I. Jan. 29, 2018) (quoting Cleveland, 526 U.S. at 806-07, 119 S.Ct. 1597 ). The district court misses the point of this affidavit. Its very purpose is to explain, as Cleveland says she must do, how she could have a good-faith belief in the truth of her SSDI assertions, while still being able to perform the essential functions of her job with a reasonable accommodation.
When Pena filed her SSDI application in September, she knew that the accommodation that she had demanded for more than three months had been repeatedly and decisively denied to her. Given this circumstance, a jury could reasonably find that Pena plausibly believed on September 20, 2013 that she became "unable to work" as of March 8, 2013. See Lowe, How Post-Cleveland Decisions Continue to Obscure Discrimination at 1278 (observing that denial of an accommodation may explain the claimant's good-faith belief in the assertion *37 to the Social Security Administration that she was unable to work); see also Diller, Dissonant Disability Policies at 1042 (noting that statements of "total disability" on a disability benefit application may be based on the individual's experience that no employer will employ her because of her disability, even if she could perform the essential elements of the job with accommodation).
The majority wrongly chides Pena because she "offered no qualification" for her assertion of disability on her SSDI application. Cleveland expressly stated that such qualification is not required. Since the SSDI definition of disability does not take accommodation into account, an applicant need not "refer to the possibility of reasonable accommodation when she applies for SSDI." Cleveland, 526 U.S. at 803, 119 S.Ct. 1597. The particulars of this case reflect the wisdom of that legal proposition. In her affidavit, Pena averred:
When I stated on my SSDI application that I was unable to work as of March 8, 2013, I meant that I was totally disabled only for the purposes of receiving SSDI benefits. The SSDI application did not ask if I needed any accommodations of a disability in order to work and no one at any of the hearings asked. Had I been asked, I would have responded, "Yes."
Without question, Pena could supportably argue to a jury that she held a good-faith belief in the accuracy of her SSDI application, given her understanding of the process, while still being in a position to perform the essential functions of her job with a reasonable accommodation.
B. Ability to Perform Essential Functions
We must now evaluate, pursuant to Cleveland, Pena's insistence that, despite her good-faith belief in her SSDI assertions of total disability, she could perform the essential functions of the job, as required for her ADA claim.
The record plainly permits a jury to find that Pena could have continued to perform the job she had held before Honeywell insisted that she work in the molding room. As Pena describes, her years of work at the facility before the rotation requirement was imposed reflect her ability to fulfill the requirements of the job beyond the molding room. In addition, her efforts to be reinstated at Honeywell, including the submission of three doctor's notes, constitute further evidence that she could have worked with her requested accommodation. In particular, Dr. Greer's March 4 letter (delivered to Honeywell on March 8), stated that Pena was "completely capable of working in other settings," but that she experienced "exacerbation of her anxiety symptoms .... when she is being sent to the moulding [sic] room as opposed to the more typical duties to which she is accustomed."[13]
The majority compares Pena's case to Sullivan v. Raytheon Co., 262 F.3d 41 (1st Cir. 2001), in which we affirmed summary judgment for the employer because the plaintiff made repeated claims that he was totally disabled and provided "no evidence" that he could work with an accommodation. Id. at 48. The facts here are strikingly different. Pena has developed a record *38 that would support a jury finding that she could have continued to work at Honeywell with her requested accommodation. At summary judgment, courts are obliged to draw record inferences on behalf of the nonmovant. Yet the majority draws every inference against Pena.
Honeywell also attempts to undercut Pena's ADA claim by pointing out that she sought an accommodation for anxiety and depression until June 2013, but she was deemed "totally disabled" by somatoform disorder as of March 2013. The company argues that, given her total disability, she would not have been able to work even if her anxiety and depression had been accommodated. Honeywell's argument, however, ignores Cleveland's admonition that ostensibly conflicting legal conclusions derived from different disability processes must be evaluated in their legal context.
As Cleveland noted, the SSDI program provides for categorical determinations of eligibility for benefits to facilitate the processing of the large number of cases handled by the Social Security Administration. See 526 U.S. at 804, 119 S.Ct. 1597. Pursuant to the five-step eligibility procedure, an individual may be deemed totally disabled without regard to her actual ability to work if her condition "meet[s] or equal[s]" an impairment in the enumerated list of impairments. Id. at 804, 119 S.Ct. 1597. The eligibility finding in such a case stems from the "regulatory determination that most individuals with certain disabilities cannot work." Anne E. Beaumont, Note, This Estoppel Has Got to Stop: Judicial Estoppel and the Americans with Disabilities Act, 71 N.Y.U. L. Rev. 1529, 1567 (1996).
The ALJ determined that Pena has "somatoform disorder," one of the listed impairments under SSDI regulations, based on the testimony of an impartial medical expert at the SSDI hearing. Because Pena met the severity criteria for a finding of categorical disability, the ALJ bypassed individual review of her capacity for work. This procedural history undermines Honeywell's argument that the ALJ determined that Pena is incapable of working even with an accommodation. It also exposes the baselessness of the majority's assumption that Pena argued somatoform disorder to the ALJ. As noted, the only statements in the record that Pena made in the course of her SSDI application are that she "became unable to work" on March 8, 2013 and "[is] still disabled."
The majority nonetheless erroneously compares Pena's circumstances to cases in which the plaintiff made specific, "purely factual" statements about disability that were incompatible with the undisputed job requirements. Unlike those cases in which the plaintiffs' descriptions of their injuries conflicted with their asserted ability to work with an accommodation, Pena's blanket statement of disability in her SSDI application does not belie her ADA claim. For example, in Reed v. Petroleum Helicopters, Inc., 218 F.3d 477 (5th Cir. 2000), cited by the majority, the plaintiff made "specific factual statements" about her inability to sit for an extended period, which the court found incompatible with her claimed ability to fly a helicopter. Id. at 480.
Likewise, in Motley v. New Jersey State Police, 196 F.3d 160 (3d Cir. 1999), also cited by the majority, the plaintiff claimed headaches, backpain, and knee aches when standing and running, and he had been found "totally and permanently incapacitated for state police officer duties" by the state police medical board. Id. at 166. On that record, the plaintiff's "sole[ ]" reliance on the difference between the statutory schemes was "fatal." Id. at 167 ; see also Feldman v. Am. Mem'l Life Ins. Co., 196 F.3d 783, 791-92 (7th Cir. 1999) (concluding *39 that plaintiff's SSDI benefits application assertions that she could not drive long distances, work a six- to eight-hour day, or carry a briefcase were incompatible with her ADA claim that she could work as a traveling salesperson); Parker v. Columbia Pictures Indus., 204 F.3d 326, 333 (2d Cir. 2000) (holding that "summary judgment may be appropriate under Cleveland where the SSDI and ADA claims 'involve directly conflicting statements about purely factual matters' ") (quoting Cleveland, 526 U.S. at 802, 119 S.Ct. 1597 ); cf. Felix v. N.Y. City Transit Auth., 154 F.Supp.2d 640, 651 (S.D.N.Y. 2001), aff'd, 324 F.3d 102 (2d Cir. 2003) (holding judicial estoppel unwarranted where, inter alia, the plaintiff "stated in general terms that she could not work as a result of her disabling condition without offering particular facts as to that condition"). Pena's SSDI application did not include specific factual assertions. Rather, the conflict here between Pena's asserted inability to work and her asserted ability to work with accommodation is exactly the nuanced contradiction that Cleveland recognized as "often" permissible. Cleveland, 526 U.S. at 797, 119 S.Ct. 1597.
Indeed, in a similar case, the Third Circuit concluded that limited prior factual assertions did not foreclose a finding that the plaintiff could perform the essential functions of her job. In Turner v. Hershey Chocolate U.S., 440 F.3d 604 (3d Cir. 2006), the employer Hershey decided to require rotation of employees among three different assembly stations in July 2001. Id. at 607. Turner objected that she could not do one of the rotations, which required standing, bending, and twisting, was considered more difficult, and was not part of her job requirements up to that point. Id. Hershey determined that Turner could not continue to work in her position without this rotation, and "she was deemed a disabled employee." Id. On a subsequent SSDI benefits application, Turner stated that she had been unable to work since July 2001, and she was awarded total disability benefits from that time. Id. The Third Circuit determined that Turner was not judicially estopped from pursuing an ADA claim:
As discussed in Cleveland, this statement of inability to work must be read as lacking the qualifier of reasonable accommodation, which did not apply for purposes of her SSDI application, but does apply for purposes of her ADA claim. Thus, in her SSDI application, Turner was saying, in effect, "I am unable to work without reasonable accommodation." This statement is not inconsistent with her ADA claim, in which she is saying, in effect, "I am able to work with reasonable accommodation."
Id. at 610. To the extent that Turner made a factual assertion about pain that limited her ability to work, the court found it did not "foreclose the possibility that she could perform [her job] with reasonable accommodation." Id. at 609. It therefore remanded the case to allow a jury to decide her ADA claim. Id. at 610, 613.
The parallels to this case are evident: the asserted date on which the plaintiff was "unable to work" for purposes of SSDI benefits does not "foreclose the possibility" that, at the same time, she could have continued working with a reasonable accommodation. In the absence of an irreconcilable factual conflict, her prior disability claim and her ADA claim could be reconciled. Hence, judicial estoppel was not required under Cleveland.
IV.
Pena's case does not implicate any of the considerations warranting the application of judicial estoppel. The district court found her case "sympathetic," without any *40 "indication that she ha[d] taken any positions in bad faith." See Pena, 2018 WL 582579, at *9. There is also no indication of her gaming the system or of causing an unfair detriment to Honeywell. Rather, a reasonable jury could conclude from this record that Pena believed herself unable to work because of Honeywell's emphatic rejection of her request for an accommodation and that she could have continued to work if provided that accommodation. Pena's explanation is thus sufficient to show that her two claims are reconcilable and that judicial estoppel should not be applied to foreclose her pursuit of ADA relief. Cleveland requires nothing more. Pena was entitled to bring her ADA claim to a jury. I therefore dissent from the majority's decision denying her that opportunity.

I join only the portion of the majority opinion affirming summary judgment for Honeywell on Pena's retaliation claims.

Presumably, the ALJ's award of benefits in SSDI cases constitutes an acceptance of the prior statement by a court. We have that circumstance here.

Whether the request not to work in the molding room is a reasonable accommodation is a separate question the jury would need to answer in evaluating Pena's ADA claim. The district court, adopting the report and recommendation of the magistrate judge, concluded that if estoppel did not apply, a genuine dispute of material facts about "whether rotation to the Molding Department was an essential function of Plaintiff's job and whether Plaintiff participated in good faith in the interactive process" foreclosed summary judgment on the reasonable accommodation claim. Pena, 2018 WL 582579, at *10.