*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0215P (6th Cir.)
File Name: 04a0215p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

---

DEWEY MICHAEL WILLIAMS,
*Plaintiff-Appellant,*

*v.*

No. 03-5573

LONDON UTILITY
COMMISSION, et al.,
*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 01-00161—William O. Bertelsman, District Judge.

Argued: June 10, 2004

Decided and Filed: July 8, 2004

Before: MARTIN and SUTTON, Circuit Judges;
WILLIAMS, Senior District Judge.[*]

---

[*] The Honorable Glen M. Williams, Senior United States District
Judge for the Western District of Virginia, sitting by designation.

---

### COUNSEL

**ARGUED:** Christopher D. Miller, RAMBICURE, MILLER
& PISACANO, Lexington, Kentucky, for Appellant. Charles
D. Cole, STURGILL, TURNER, BARKER & MALONEY,
Lexington, Kentucky, Robert L. Roark, WALTHER,
ROARK, GAY & TODD, Lexington, Kentucky, for
Appellees. **ON BRIEF:** Christopher D. Miller, William C.
Rambicure, RAMBICURE, MILLER & PISACANO,
Lexington, Kentucky, for Appellant. Charles D. Cole,
Douglas L. McSwain, STURGILL, TURNER, BARKER &
MALONEY, Lexington, Kentucky, Robert L. Roark,
LaDonna L. Koebel, WALTHER, ROARK, GAY & TODD,
Lexington, Kentucky, for Appellees.

---

### OPINION

---

BOYCE F. MARTIN, JR., Circuit Judge. Dewey Michael
Williams appeals from the adverse grant of summary
judgment on his breach-of-contract and disability-
discrimination claims, arising from his employment as
superintendent of the London Utility Commission. Mr.
Williams alleges that the district court erred: (1) in holding
that Mr. Williams's employment agreement was void from its
inception because the London Utility Commission exceeded
its statutory authority by creating the contract without the
approval of the Mayor; and (2) in holding that Mr. Williams
did not prove that the City of London's reasons for firing him
were pretext for purposes of the Americans with Disabilities
Act. Finding no error, we affirm.

I.

The London Utility Commission of London, Kentucky, hired Mr. Williams in late 1992. In March 1998, the Utility Commission entered into an employment contract with Mr. Williams. At the time that the contract was signed, both the Utility Commission and Mr. Williams knew that the contract might be invalid if the Utility Commission lacked authority to enter into the agreement.

The contract provided that Mr. Williams would be employed for a three-year term, and the contract would renew automatically for another three-year term unless one party gave the other 90-days written notice of termination, which the defendants concede was not given. The contract also provided that Mr. Williams could be removed only for cause by the Utility Commission. The agreement was signed by the Commissioners, but not signed by Mayor Smith.

In early 2001, Mayor Smith[1] decided to terminate Mr. Williams. He has given various reasons for this decision, including: Mr. Williams's inability to deal with personnel problems on his own, Mr. Williams's inability to get along with customers and the public, and a complaint by Ken Wilson, a former employee.[2] Mayor Smith also perceived that after the city passed Ordinance 981 (discussed below), Mr. Williams became obstinate and difficult. Mayor Smith

---

[1] Mayor Smith was elected in 1994.

[2] The district court states that Mayor Smith was motivated, at least in part, by Ken Wilson's complaint. However, the deposition of Mayor Smith is directly contrary to this. Mayor Smith clearly states that this did not motivate his decision to terminate Mr. Williams. In fact, Mayor Smith believed that the letter of reprimand that was placed in Mr. Williams's file was enough to deal with the situation. At the summary judgment stage, the district court is bound to view the facts in the light most favorable to the non-moving party, in this case Mr. Williams.

alleged that Mr. Williams was upset by the removal of his authority and refused to solve petty employment issues on his own. The Mayor also believed that Mr. Williams had lied to him, but he was unable to identify a specific instance in which Mr. Williams lied.

On February 22, 2001, one of the London Utility Commissioners told Mr. Williams that he must attend a meeting with Mayor Smith. The Commissioner told Mr. Williams that he was going to be fired. At the meeting with the mayor, the subject of Mr. Williams's health arose. At the conclusion of the meeting, Mr. Williams and the Mayor agreed that Mr. Williams could stay until June 2001, so that he could apply for disability benefits. Subsequently, Mr. Williams sent a letter to the Mayor stating that he had a valid contract and that the Mayor did not have the power to terminate him. After receipt of this letter, Mayor Smith terminated Mr. Williams on February 28, 2001.

Mr. Williams filed suit in the district court claiming that he suffered disability discrimination and age discrimination.[3] Mr. Williams also brought due process claims under 42 U.S.C. § 1983 and state-law claims for breach of contract, intentional interference with contractual rights, intentional infliction of emotional distress, and breach of the implied covenant of good faith and fair dealing. The district court granted summary judgment to defendants on all claims. Mr. Williams appeals the section 1983 and state-law contract claims and the disability-discrimination claim. He does not appeal the intentional-infliction-of-emotional-distress claim.

---

[3] Although the age-discrimination claim was alleged in the complaint, Mr. Williams did not contest summary judgment on this claim and does not appeal this issue.

## II.

This Court reviews the grant of summary judgment *de novo*. *Lake v. Metropolitan Life Ins. Co.*, 73 F.3d 1372, 1376 (6th Cir. 1996).

We must first determine whether the London Utility Commission had the power to enter into the contract with Mr. Williams. Thus, we must examine the applicable Kentucky constitutional and statutory provisions, together with the ordinances of the City of London.

In 1891, section 162 of the Kentucky Constitution was adopted, which provides that "[n]o county, city, town or other municipality shall ever be authorized or permitted to pay any claim created against it, under any agreement or contract made without the express authorization or law, and all such unauthorized agreements or contracts shall be null and void." Subsequently, in 1942, the Kentucky legislature passed section 96.530 of the Kentucky Revised Statutes, which allows cities to create and operate light, heat, and power plants. This statute allows for the establishment of a utility commission as a separate corporate body with the power to contract and the power to manage all employment issues. As the district court noted, this statute specifically does not include water commissions. In fact, in 1942, the Kentucky legislature also passed section 96.350 of the Kentucky Revised Statutes, which allows certain cities, including the City of London, to operate waterworks facilities. This statute does not provide for a commission organized as a separate corporate body with control of its own employees as does section 96.530.

In 1948, the City of London passed Ordinance 344, which created the Utility Commission for water and sewers. This ordinance gave the Utility Commission the authority to hire a project superintendent, who could be removed by the Commission "for inefficiency, neglect of duty, misfeasance

or malfeasance in office." As noted by the district court, Ordinance 344 appears as if it were organized to meet the strictures of section 96.530, rather than section 96.350.

In 1980, the Kentucky legislature passed the "Home Rule Statutes." Section 83A.130(9) of the Kentucky Revised Statutes provides that "[t]he mayor shall be the appointing authority with the power to appoint and remove all city employees . . . except as tenure and terms of employment are protected by statute, ordinance or contract." Furthermore, section 83A.020 provides that all ordinances which conflict with the Home Rule Statutes are void.

The London Utility Commission hired Mr. Williams in 1992, and the parties entered into the employment contract in question in 1998. In December 2000, the City of London passed Ordinance 981, which repealed Ordinance 344 and reorganized the Utility Commission to align with the Home Rule Statutes. Ordinance 981 states that the Utility Commission shall recommend to the mayor a person to employ as superintendent. Acknowledging the Home Rule Statutes, Ordinance 981 also states that the "[m]ayor shall make all decisions relating to employment[, including] hiring, lay-offs, terminations, and other similar decisions relating to employment." Section 9 of Ordinance 981 states that the "Commission shall be bound under the terms of any previous contracts and/or agreements made and entered into by or on behalf of the Commission that exist at the time of enactment."

We agree with the district court that the contract was void from its inception. Mr. Williams was hired after the passage of the Home Rule Statutes, which indicate that only the mayor has the power to hire and fire city employees. According to the Home Rule Statutes, any ordinances in conflict with the Home Rule Statutes are void. Thus, Ordinance 344 was void, at least in part, upon the passage of the Home Rule Statutes. Because Mr. Williams was hired after the passage of the Home Rule Statutes, Ordinance 344

was void, and the Commission did not have the power to make this contract; only the Mayor held such power.

The London Utility Commission was not authorized by statute to operate independently. Mr. Williams argues extensively that, as a matter of agency law, the Utility Commission, and not the City of London, was his employer. We do not find his arguments persuasive. Although factually it appears that the Utility Commission controlled Mr. Williams's activities and acted as his employer, if the Utility Commission does not have the statutory power to employ Mr. Williams in view of section 83A.130(9) of the Kentucky Revised Statutes, then he must be an employee of the City of London. Because Mayor Smith has ultimate authority over city employees, Mayor Smith had the power to terminate Mr. Williams.

If Mr. Williams has no contract, he is an employee-at-will, has no property interest in his employment and can be fired for any reason or no reason at all (except for a discriminatory reason). Because we hold that Mr. Williams's contract was void and no party raises the issue of ratification of the contract, we think that Mr. Williams was an employee-at-will and that his termination was proper. Therefore, we affirm the district court's grant of summary judgment to defendants on Mr. Williams's contract-related and due process claims.

## III.

A prima facie case of disability discrimination requires the plaintiff to prove that: "(1) he is an individual with a disability; (2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodations; and (3) he was discharged solely by reason of his handicap." *Cotter v. Ajilon Servs.*, 287 F.3d 593, 598 (6th Cir. 2002). If the plaintiff can prove a prima facie case, then the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the termination. Then, the burden

shifts back to the plaintiff to prove that the stated reasons are pretext. *See Martin v. Barnesville Exempted Vill. Sch. Dist. Bd. of Educ.*, 209 F.3d 931, 934 (6th Cir. 2000).

The district court assumed without deciding that Mr. Williams could prove a prima facie case of discrimination and that Mayor Smith could demonstrate legitimate non-discriminatory reasons for the discharge. However, the district court concluded that Mr. Williams was unable to prove that the Mayor's reasons were pretext. We do not have to reach the issue of pretext to resolve this claim because we do not believe that Mr. Williams can prove a prima facie case of disability discrimination.

A prima facie case of disability discrimination requires that the plaintiff prove he was qualified to perform his job requirements with or without reasonable accommodation. Mr. Williams's employment was terminated on February 28, 2001, and Mr. Williams applied for disability benefits under the Kentucky Retirement System on March 1, 2001, claiming that he was totally disabled. It is incongruous that Mr. Williams was able to perform his job requirements when he was terminated on February 28, but he was unable to perform the same work as of March 1.

The Supreme Court has explained that

[a]n ADA plaintiff bears the burden of proving that she is a "qualified individual with a disability" — that is, a person "who with or without reasonable accommodation, can perform the essential functions" of her job. 42 U.S.C. § 12111(8). And a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case — at least if she does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier []

disability claim. Rather, she must proffer a sufficient explanation.

*Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). This means that in order to survive a motion for summary judgment, the plaintiff's "explanation must be sufficient to warrant a reasonable juror's concluding that . . . the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.' " *Id.* at 807.

Mr. Williams was terminated on February 28, and he applied for disability benefits the very next day. Mr. Williams subsequently filed suit, alleging that he was able to perform his job requirements as of the date of his termination. Mr. Williams has failed to offer sufficient evidence to explain these contradictory statements. Mr. Williams argues that the affidavit of Bobby Turner, M.D. explains the contradiction. This affidavit states that "Mr. Williams' termination of employment at or near the end of February 2001 had a devastating effect upon him emotionally, which, in my opinion, worsened his physical conditions." Furthermore, Dr. Turner opined that "the termination and its emotionally devastating effects upon Mr. Williams rendered him unable to work when combined with his pre-existing physical conditions." Accepting this statement as true, we do not think that it provides a sufficient explanation for the contradictory statements. Dr. Turner's statement was signed on April 25, 2001. While Mr. Williams's health may have declined to the point where he became unable to work during this two-month period, he provides no explanation for how his health declined to the point of being unable to work on March 1, 2001, the date on which he filed for disability benefits and one day after his termination. Because we hold that Mr. Williams's explanation of these contradictory statements was insufficient, we affirm the district court's grant of summary judgment.

For the reasons stated herein, we AFFIRM the judgment of the district court.