**Grady C. HART, Jr., et al., Plaintiff,**

v.

**The RIDGE TOOL COMPANY, Defendant.**

**No. 1:06 CV 780.**

United States District Court, N.D. Ohio, Eastern Division.

Feb. 4, 2008.

Grady C. Hart, Jr., Odenville, AL, pro se.

Patricia G. Hart, Gulf Shores, AL, pro se.

Susan Porter, Eve M. Ellinger, Schottenstein, Zox & Dunn, Columbus, OH, for Defendant.

### *MEMORANDUM OPINION*

DONALD C. NUGENT, District Judge.

This matter is before the Court upon the Report and Recommendation of Magistrate Judge William H. Baughman (Docket # 61) recommending that the Court grant the Motion for Summary Judgment (Docket # 52) filed by Defendant, The Ridge Tool Company ("Ridge Tool").

As discussed in detail in the Magistrate Judge's Report and Recommendation, Mr. Hart claims that he was wrongfully terminated because of his disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; his age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623 *et seq.;* and, in retaliation for making a complaint of age discrimination, in violation of 29 U.S.C. § 623(d).

Ridge Tool seeks summary judgment as to all of Mr. Hart's claims.[1] Relative to the disability and age discrimination claims, Ridge Tool asserts that Mr. Hart represented to the Social Security Administration, and the Administration found, that prior to his termination Mr. Hart was disabled and unable to work. Therefore, because he could not work, he was not a qualified individual for purposes of the ADA or the ADEA. Relative to his retaliatory discharge claim, Ridge Tool argues that Mr. Hart has failed to establish a causal link between his discrimination complaint and his discharge.

Mr. Hart filed a Memorandum in Opposition to Ridge Tool's Motion for Summary Judgement (Docket # 54) and Ridge Tool filed a Reply Brief (Docket # 55).

The Magistrate Judge set forth the facts of this case as follows:

Ridge manufactures equipment and tools for the plumbing industry and employs a sales force to sell these tools nationally and internationally to wholesale distributors. In 1984, Ridge hired Hart to work as a district sales manager, for which he received both salary and commission as compensation. Initially, Hart had a sales territory in Alabama, but that territory changed over time.

Hart's position as a district sales manager required him to put together business plans for his customers, to travel to the customers' sites to demonstrate Ridge's tools, and to physically train the customers in the use of the tools purchased. Most of the time, Hart drove a company owned vehicle to make sales calls. Hart was required to physically load and unload the tools he used during sales calls, some of which weighed between 300 and 500 pounds each.

In 1999, Hart sustained a neck injury at work. In 2002, Hart's doctor placed him on a permanent lifting restriction of 30 pounds. In 2002, Hart began experiencing blackouts that prevented him from driving.

In February of 2003, Hart applied for and was granted a medical leave of absence. Ridge's medical leave of absence policy provided for continuation of employment for up to 12 months if long-term disability has not been approved and up to 15 months if long-term disability is approved.

---

1. *Although both Grady Hart and his wife, Patricia, are named Plaintiffs in this case, the Court will refer to "Mr. Hart" throughout this* Opinion, *rather than "Plaintiffs." The findings of this Court are intended to be dispositive as to all claims and parties.*

In August of 2004, Ridge learned that the third-party insurance carrier had denied Hart's claim for long-term disability benefits. At that time, Hart had been on medical leave for more than 18 months, beyond Ridge's one-year leave limit under its policy, and Ridge had paid Hart full salary for the entire leave period, even though the policy provided only for 13 weeks of full salary continuation. Hart had not given Ridge medical documentation releasing him to work. Accordingly, by letter dated September 7, 2004, Ridge notified Hart of the termination of his employment effective September 10, 2004. Patrick Comeau, Ridge's Vice President of Human Resources, and Clifford Wells, Ridge's Director of Sales North America, made the decision to terminate Hart's employment.

Hart applied for Social Security disability benefits in October of 2004. The Social Security Administration found Hart disabled as of February 28, 2003. In the course of applying for those benefits, Hart represented to the agency that he was totally disabled.

The retaliation claim centers on a letter sent in February of 2001 by Hart to Fred Pond, then President of Ridge, complaining about an ageist remark made by a Mike Slemko. This letter followed a sales meeting in Puerto Vallarta, Mexico, where Slemko made the comment "I will not hire any older people to work under me. I will be looking for younger guys." Slemko became Southeast Regional Sales Manager and Hart's supervisor in April of 2001. Slemko also made a remark about a need to hire young, aggressive salesmen at a meeting with a potential customer in 2002. As stated above, Ridge terminated Hart effective September 10, 2004. Patrick Comeau and Clifford Wells made the termination decision. There is no evidence that Slemko participated in this decision.

Magistrate Judge Baughman's Report and Recommendation (Docket # 61) at pp. 6–9 (citations omitted, refer to Report and Recommendation).

On December 4, 2007, Magistrate Judge Baughman issued his Report and Recommendation. Magistrate Judge Baughman recommends that the Motion for Summary Judgement filed by Ridge Tool be granted as to all of Plaintiff's claims. With regard to Mr. Hart's disability and age discrimination claims, the Magistrate Judge determined that even though Mr. Hart's disability and age discrimination claims were not precluded by the Social Security Administration's finding of disability, Mr. Hart did not provide sufficient proof that he could have done his work as a District Sales Manager for Ridge Tool even with an accommodation. Rather, the evidence in the record shows that at a time predating his termination, Mr. Hart was totally disabled and not capable of performing work, with or without any accommodations. Therefore, under both the ADA and the ADEA, Mr. Hart was not qualified for the position at the time of termination.

Furthermore, relative to Mr. Hart's age discrimination claims, the Magistrate Judge found no direct evidence in the record to support Mr. Hart's assertion that he was terminated because of age. As reasoned by the Magistrate Judge, the comments made by Mr. Slemko that he wanted to hire, or that the company should hire young aggressive sales persons, and presented by Mr. Hart as the only evidence of age discrimination, were not directed at Mr. Hart and made no reference replacing existing sales persons with younger individuals. Further, there is no evidence in the record that Mr. Slemko was involved in the decision to terminate Mr. Hart's

employment. Applying the standards identified by the Sixth Circuit in *Peters v. Lincoln Electric Company*, 285 F.3d 456, 477–78 (6th Cir.2002), the Magistrate Judge found that the statements made by Mr. Slemko, taken in the light most favorable to Mr. Hart, do not create a genuine issue of material fact as to direct evidence of a discriminatory termination. Specifically, the Magistrate Judge stated "the statements were not made by a person who made the decision to terminate Hart, did not relate to the decision-making process, were vague and isolated, and were not made proximate in time with the termination." See Report and Recommendation at p. 653.

Finally, the Magistrate Judge found that the lack of temporal proximity between Mr. Hart's complaint to Ridge Tool's President in 2001 and his termination in 2004 (over three years) defeats Mr. Hart's retaliation claim. The Magistrate Judge went on to note that even if there were a sufficient temporal proximity, the record demonstrates that Mr. Hart's employment was terminated because he was unable to perform his job, and he exhausted the medical leave afforded him by Ridge Tool. There is no other evidence of a causal connection between his complaint in 2001 and his termination in 2004.

Mr. Hart submitted objections to the Magistrate Judge's Report and Recommendation.[2] Mr. Hart urges the Court to decline to adopt the Magistrate Judge's Report and Recommendation. As a preliminary matter, Mr. Hart argues (1) that he was wrongfully denied the right to file

an answer to Ridge Tool's Reply Brief; and, (2) that the Magistrate judge did not apply the proper standard when analyzing the arguments raised in Ridge Tool's Motion for Summary Judgment. Mr. Hart goes on to list several items which he asserts create questions of fact, including the assertions that (1) he never testified that he had problems devising business plans in 2001 or 2002; (2) he was not experiencing blackouts that made it unsafe for him to drive in February 2002; (3) that Mr. Slemko "silently made decisions" about his performance while he was on medical leave so he must have been a decision-maker with regard to Mr. Hart's termination; and, (4) that Ridge Tool retaliated again him in various ways including changes to his territory and salary structure, forcing him to go on medical leave, forcing him to attend meetings while he was on medical leave, and failing to accommodate his lifting restrictions.

On January 7, 2008, Ridge Tool filed its Response to Mr. Hart's Objection to the Magistrate's Report and Recommendation. First, Ridge Tool notes that per Local Rule 7. 1, Plaintiff was not entitled to file a response to Ridge Tool's Reply Brief without leave of Court, yet the Magistrate Judge reviewed the Reply and found that it did not contain any meritorious legal arguments or authorities. Further, Ridge Tool notes that the Magistrate Judge used the appropriate legal standard for reviewing a Summary Judgment motion filed pursuant to Civil Rule 56, as this was not a Motion to Dismiss filed pursuant to Fed. R.Civ.P. 12(b)(6).

2. On December 11, 2007, the Court advised Plaintiffs that any objection to the Report and Recommendation was due by December 21, 2007. Plaintiffs Objections to the Magistrate Judge's Report and Recommendation were dated December 18, 2007 and were forwarded to Chambers and Counsel for Defendants. The Court forwarded a copy to the Clerk's Office for filing, and the Objections were docketed on January 8, 2008. Notwithstanding the fact that the Objections were not filed by December 21, 2007, the Court has fully reviewed and considered the Objections filed by Plaintiffs and Defendant's response thereto.

Ridge Tool's Response goes on to address the factual issues raised by Mr. Hart. Ridge Tool asserts that although Mr. Hart's employment was not terminated until September 10, 2004, the Social Security Administration determined that prior to the time he was terminated "he was totally disabled and was not capable of performing work, with or without any accommodations." Ridge Tool cites Mr. Hart's deposition testimony, during which he discussed his job requirements as including loading and unloading the company's tools into his Company-owned vehicle; driving to visit customers; and, physically demonstrating the tools to the customer. Ridge Tool argues that regardless of when Mr. Hart's blackouts or memory problems began, Mr. Hart's inability to drive himself, and his inability to transport and demonstrate Company tools in light of the permanent lifting restrictions placed upon him, rendered him unable to perform the essential functions of his job.

Ridge Tool states that even if Mr. Hart could show that his blackouts did not begin until January 2003 as he now asserts, he was unable to perform at least one of the essential functions of his job, driving, at all times relevant to the claims raised in the Complaint. Therefore, Ridge Tools states that Mr. Hart was not a qualified individual with a disability at the time of his termination, thereby defeating both is disability and age discrimination claims.

In addition to the above, Ridge Tool expresses agreement with the Magistrate Judge's conclusion that aside from the failure to establish a prima facie case of age discrimination, Mr. Hart's reliance on isolated statements by Mr. Slemko three years prior to his termination is insufficient to otherwise sustain his age discrimination claim. Further, Mr. Hart's complaints regarding Mr. Slemko's statements three years prior to his termination, standing alone, do not support a retaliation claim. Ridge Tool argues that the additional allegations of retaliation raised by Mr. Hart in his Objections to the Report and Recommendation are unsubstantiated and that Mr. Hart has failed to demonstrate a causal connection between the termination of his employment and his complaint to the Company in 2001.

## Standard of Review for a Magistrate Judge's Report and Recommendation

The applicable district court standard of review for a magistrate judge's report and recommendation depends upon whether objections were made to the report. When objections are made to a report and recommendation of a magistrate judge, the district court reviews the case *de novo*. FED.R.CIV.P. 72(b) provides:

The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

The Court has reviewed the Report and Recommendation of Magistrate Judge Baughman *de novo*. *See Massey v. City of Ferndale*, 7 F.3d 506 (6th Cir.1993). The Court has also considered all of the pleadings, affidavits, motions, and filings of the parties. After careful evaluation of the record, the Report and Recommendation, and the objections filed by Mr. Hart and Ridge Tool's response thereto, this Court finds the Report and Recommendation issued by Magistrate Judge Baughman to be correct.

## Discussion

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995) (citing *Anderson,* 477

U.S. at 252, 106 S.Ct. 2505). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.,* 53 F.3d 146, 149 (6th Cir.1995). FED. R.CIV.P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that " 'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.' " *Wiley v. United States,* 20 F.3d 222, 225–26 (6th Cir.1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988)). FED. R.CIV.P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes

be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley,* 20 F.3d at 225–26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249, 106 S.Ct. 2505. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact

because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

## A. Mr. Hart's ADA Claim.

■ In order to establish disability discrimination under the ADA, a plaintiff must show the following five elements:

(1) he or she is disabled, (2) is otherwise qualified for the job, with or without reasonable accommodation, (3) suffered an adverse employment decision, (4) the employer knew or had reason to know of his or her disability, and (5) after rejection or termination the position remained open, or the disabled individual was replaced.

*Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1185 (6th Cir.1996) (interior quotes and citations omitted). If the plaintiff presents evidence of a prima facie case, then the defendant may produce evidence of a legitimate, non-discriminatory reason for its actions. The plaintiff must then introduce evidence to show that the defendant's reason was a mere pretext for illegal discrimination. *See Kocsis v. Multi–Care Mgmt., Inc.,* 97 F.3d 876, 882 (6th Cir.1996). At all times, the plaintiff bears the ultimate burden of persuasion. *See Monette,* 90 F.3d at 1186.

■ Assuming the facts in the light most favorable to him, Mr. Hart has failed to satisfy this burden. Mr. Hart has not set forth evidence sufficient to prove that he was qualified to perform the essential functions of his job when he was terminated. The undisputed evidence, taking into consideration the objections raised by Mr. Hart, shows that Mr. Hart was unable to drive to make calls to customers due to his blackouts and was incapable of lifting and demonstrating Ridge Tools' products, essential functions of his position. Mr. Hart has not provided any evidence to support

his assertion that his 30–pound lifting limitation could have been accommodated through the use of lifting devices.

The Magistrate Judge determined that the evidence of record supports the finding that Mr. Hart was totally disabled, and not capable of performing work, with or without any accommodations. In light of these factors, the Magistrate Judge correctly concluded that Mr. Hart was not qualified to perform the essential functions of his District Sales Manager position. Accordingly, because he has failed to set forth a prima facie case of disability discrimination, Ridge Tool is entitled to summary judgment on Mr. Hart's ADA claim as a matter of law.

### B. Age Discrimination

■ To establish a prima facie case of wrongful discharge based on age, the plaintiff must show that: (1) he was at least 40 years old at the time of his discharge; (2) he was subjected to an adverse employment action; (3) he was qualified for the position involved; and (4) he was ultimately replaced by a younger individual. *Cooley v. Carmike Cinemas, Inc.,* 25 F.3d 1325, 1329 (6th Cir.1994) (referencing the four-part test established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). If such a showing is made, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory explanation for the discharge. Once that explanation is advanced, the burden of production returns to the plaintiff to show that the reason offered by the employer was merely a pretext for discrimination. *Id.* At all times, however, the ultimate burden of persuasion remains upon the plaintiff. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ Alternatively, an employee may show age discrimination by direct evidence of discriminatory statements. In evaluating direct evidence claims, the Court must consider: (1) whether a decision-maker or an agent within the scope of his employment made the statement; (2) whether the statements related to the decision-making process; (3) whether the statements were more than merely vague, ambitious or isolated remarks; and, (4) whether they were made proximate in time to the act of termination. *Cooley,* 25 F.3d 1325, 1330.

■ As noted by the Magistrate Judge, regardless of whether a plaintiff proceeds on a theory of direct or indirect evidence, he still must prove that a causal link exists between the purported age discrimination and the discharge.

As discussed in the Magistrate Judge's Report and Recommendation and as referenced above, Mr. Hart has not presented evidence to this Court that he was qualified for the position when he was terminated. Therefore, Mr. Hart has failed to satisfy the prima facie case for age discrimination under the indirect evidence test. Further, had Mr. Hart set forth a prima facie case, he has not presented any evidence that the reasons for his termination offered by Ridge Tool were a pretext for any type of discrimination. Due to his medical condition, Mr. Hart was unable to perform essential job functions. His employment was terminated upon exhaustion of the medical leave extended to him by Ridge Tool.

■ Analyzing the claim under the direct evidence standard, even if Mr. Slemko was the decision maker relative to Mr. Hart's employment, which is asserted by Mr. Hart but remains unsubstantiated, there is no evidence that the statements made by Mr. Slemko three years prior were related to the termination of Mr. Hart's employment in 2004, or that the

remarks were more than vague, isolated remarks. The statements made by Mr. Slemko were not directed at Mr. Hart, did not reference replacing existing employees with younger individuals, and, there is no evidence that the termination was the result of a discriminatory motive. The evidence of record documents Mr. Hart's medical condition at the time of his termination and his inability to perform his job at that time. Therefore, the Court finds that Mr. Hart has not established the causal link necessary to sustain his claim.

Based on the foregoing, the Magistrate Judge correctly found that Mr. Hart has failed to establish a claim for age discrimination. Accordingly, Ridge Tool is entitled to summary judgment as a matter of law relative to Mr. Hart's ADEA claim.

## C. Retaliation.

■ As set forth above, a plaintiff must initially establish a prima facie case of retaliation by proving: (1) he engaged in protected activity; (2) the defendant knew he engaged in the protected activity; (3) thereafter, the Defendant took an employment action adverse to Plaintiff; and, (4) there was a causal connection between the protected activity and the adverse employment action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000). Absent direct evidence, "evidence . . . that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

■ As discussed by the Magistrate Judge, Mr. Hart did not present evidence sufficient to establish a causal connection between his complaint to Ridge Tool in 2001 and the termination of his employment in 2004. There is no direct evidence that Mr. Hart's employment was terminated in retaliation for lodging a complaint

with Ridge Tool alleging age discrimination. Further, the evidence is insufficient to support an inference of retaliation. Over three years elapsed between the protected activity and his discharge and there is no evidence linking the termination of Mr. Hart's employment to his earlier complaint. Accordingly, Mr. Hart has failed to substantiate his claim for retaliation and Ridge Tool is entitled to summary judgment as a matter of law.

### Conclusion

Based on the foregoing, the Court finds that Mr. Hart has failed to present evidence to this Court sufficient to sustain his claims against Ridge Tool. The Court hereby ADOPTS the recommendation of the Magistrate Judge that summary judgment be granted in favor of Ridge Tool as to all of Mr. Hart's claims. Accordingly, the Motion for Summary Judgment filed by Ridge Tool (Docket # 52) is hereby GRANTED as to all claims. This case is terminated.

IT IS SO ORDERED.

### *REPORT & RECOMMENDATION*

WILLIAM H. BAUGHMAN, JR.,
United States Magistrate Judge.

### I. Introduction

This is a disability and age discrimination case brought by plaintiff Grady C. Hart, Jr., proceeding *pro se*, against his former employer, The Ridge Tool Company. As presently postured, the case presents claims that Ridge wrongfully terminated Hart because of a disability, his age, and in retaliation for making a complaint of age discrimination. District Judge Donald C. Nugent has referred this case to me for general, pretrial supervision and for

report and recommendation on any dispositive motions.[1]

Ridge has filed a motion for summary judgment directed to all pending claims.[2] Hart has filed a memorandum in opposition to the motion,[3] and Ridge has filed a reply in support of the motion.[4] Hart has filed a supplemental brief opposing the motion without leave of court.[5]

Ridge's motion presents two dispositive issues for decision:

- A Social Security finding of a disability predating an employee's termination does not per se bar a claim of wrongful termination because of disability or age. Nevertheless, to create a genuine issue of material fact, the employee must present evidence of capability to perform the essential functions of his job and of qualification for that job despite his representations to SSA, and SSA's finding, of disability. Hart represented to SSA that he was disabled as of a time predating his termination, and SSA so found. Has Hart produced sufficient evidence of his capabilities to avoid summary judgment on his discrimination claims?

- To establish retaliatory discharge, the plaintiff must establish a causal link between his discrimination complaint and his discharge. The causal link does not exist absent evidence that the termination occurred shortly after the complaint and that the plaintiff was treated differently than other employees. Here Hart complained of a supervisor's ageist remarks in January

of 2001 but was not discharged until September of 2004. Does that evidence create a genuine issue of material fact as to the causal link?

After careful consideration of the briefs and the Civil Rule 56 record, I conclude that Hart's representations of disability to the Social Security Administration, and that agency's finding of disability predating his termination, in the absence of a sufficient explanation to the contrary, defeats the disability and age discrimination claims. Furthermore, Hart's 2001 complaint about age-related remarks made by a supervisor was too remote from his termination to establish a triable issue of a causal link between that complaint and the termination, particularly in light of the condition of Hart's health at the time of the termination. I must, therefore, recommend that Judge Nugent grant Ridge's motion for summary judgment.

## II.  Course of Proceedings

Prior rulings shape the current posture of this case.

As a result of a status conference held by me and briefing on Ridge's motion for judgment on the pleadings, Hart clarified that he was pursuing claims under federal law only.[6] I recommended the granting of Ridge's motion for judgment on the pleadings to the extent of limiting Hart's claims to the scope of his EEOC complaint.[7] That complaint asserted that Ridge had wrongfully terminated Hart because of his disability and age and in retaliation for claims about age discrimination. Neither party objected to that recommendation.

---

1.  ECF # 8.

2.  ECF # 52.

3.  ECF # 54.

4.  ECF # 55.

5.  ECF # 58. Ridge has filed a motion to strike that brief and affidavits submitted with it. ECF # 59. I will rule on that motion in a separate entry.

6.  ECF # 36 at 2–3.

7.  *Id.* at 9.

Judge Nugent issued a memorandum opinion and order granting my recommendation to the extent of limiting Hart's claims to wrongful termination because of disability and age and in retaliation for claims about age discrimination.[8]

Accordingly, I now have before me three claims for relief: (1) termination of employment because of disability in violation of the Americans With Disabilities Act ("ADA"),[9] (2) termination of employment because of age in violation of the Age Discrimination and Employment Act ("ADEA"),[10] and (3) termination of employment in retaliation for making a complaint of age discrimination.[11]

Ridge has referenced and has made arguments in opposition to charges of libel and fraud in the brief in support of the motion for summary judgment.[12] Hart has also made reference to such claims in one of his briefs.[13]

Ridge states that Hart filed a motion to charge defendant with libel and fraud on July 5, 2007.[14] I can find no such motion on the Court's docket. Nevertheless, in a minute order entered on July 11, 2007, I granted Hart's request to withdraw without prejudice claims of libel and fraud.[15] In that order I stated that such charges could be refiled with any motion for summary judgment consistent with the schedule set out in the minute order, which required motions for summary judgment to be filed by September 5, 2007. Thereafter, I extended that date to October 2, 2007.[16] Hart did not file a motion for summary judgment reasserting any libel or fraud claim by October 2, 2007 or thereafter. His only reference to those claims appears in his second brief, which was filed out of rule and without leave of court. Accordingly, no libel or fraud claims are currently part of this case.

## III. The Facts

### A. Standards for reviewing the evidence as to relevant ("material") facts

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [17] A fact is "material" only if its resolution will affect the outcome of the lawsuit.[18] Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.[19] As a general matter, the judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." [20] The court will not consider nonmaterial facts [21] Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.[22] The

---

8. ECF # 38 at 4.

9. 42 U.S.C. § 12101 *et seq.*

10. 29 U.S.C. § 623 *et seq.*

11. 29 U.S.C. § 623(d)

12. ECF # 52 at 18–20.

13. ECF # 58 at 8–9.

14. ECF # 52 at 18.

15. ECF # 41.

16. ECF # 47.

17. Fed.R.Civ.P. 56(c).

18. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

19. *Id.* at 252, 106 S.Ct. 2505.

20. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

21. *Id.* at 249, 106 S.Ct. 2505.

22. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.

nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."[23] "In other words, the movant can challenge the opposing party to 'put up or shut up' on a critical issue."[24]

## B.   The material, undisputed facts

In consideration of the above standards, I find the facts set out below material, undisputed, and dispositive of Ridge's motion. The Civil Rule 56 records contain many additional facts regarding Hart's employment with Ridge, communications between Hart and Ridge, and the details of Hart's medical condition over time; and disputes exist as to many of those facts. These additional facts, and in particular those in dispute, are not material to the dispositive legal issues here.

Ridge manufactures equipment and tools for the plumbing industry and employs a sales force to sell these tools nationally and internationally to wholesale distributors.[25] In 1984, Ridge hired Hart to work as a district sales manager, for which he received both salary and commission as compensation.[26] Initially, Hart had a sales territory in Alabama, but that territory changed over time.[27]

Hart's position as a district sales manager required him to put together business plans for his customers, to travel to the customers' sites to demonstrate Ridge's tools, and to physically train the customers in the use of the tools purchased.[28] Most of the time, Hart drove a company-owned vehicle to make sales calls.[29] Hart was required to physically load and unload the tools he used during sales calls, some of which weighed between 300 and 500 pounds each.[30]

In 1999, Hart sustained a neck injury at work.[31] In 2002, Hart's doctor placed him on a permanent lifting restriction of 30 pounds.[32] In 2002, Hart began experiencing blackouts that prevented him from driving.[33]

In February of 2003, Hart applied for and was granted a medical leave of absence.[34] Ridge's medical leave of absence policy provided for continuation of employment for up to 12 months if long-term disability has not been approved and up to 15 months if long-term disability is approved.[35]

In August of 2004, Ridge learned that the third-party insurance carrier had denied Hart's claim for long-term disability

**23.**   *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir.1995).

**24.**   *BDT Products, Inc. v. Lexmark Int'l Inc.*, 124 Fed.Appx. 329 (6th Cir.2005).

**25.**   ECF #51, Attachment 1, Deposition of Grady Hart, Vol. 1 ("I Hart Dep.") at 21–22; ECF #52, Attachment 1, Affidavit of Cliff Wells ("Wells Aff.") at ¶ 3.

**26.**   ECF #53 at ¶ 2; ECF #51, Deposition of Patrick Comeau at 12; ECF #51, Attachment 7, Deposition of Cliff Wells at 5.

**27.**   I Hart Dep. at 19–20.

**28.**   I Hart Dep. at 20–21, 23–24.

**29.**   I Hart Dep. at 25–26; ECF #51, Attachment 2, Grady Hart Deposition Transcript, Volume II ("II Hart Dep.") at 65.

**30.**   I Hart Dep. at 27–29, 46–47.

**31.**   I Hart Dep. at 48.

**32.**   I Hart Dep. at 61, II Hart Dep. at 17.

**33.**   II Hart Dep. at 17–18.

**34.**   I Hart Dep. at 31; ECF #51, Attachment 4, Hart Deposition Exhibit ("Hart Dep. Ex.") 4.

**35.**   Hart Dep. Ex. 8.

benefits.[36] At that time, Hart had been on medical leave for more than 18 months, beyond Ridge's one-year leave limit under its policy, and Ridge had paid Hart full salary for the entire leave period, even though the policy provided only for 13 weeks of full salary continuation.[37] Hart had not given Ridge medical documentation releasing him to work.[38] Accordingly, by letter dated September 7, 2004, Ridge notified Hart of the termination of his employment effective September 10, 2004.[39] Patrick Comeau, Ridge's Vice President of Human Resources, and Clifford Wells, Ridge's Director of Sales North America, made the decision to terminate Hart's employment.[40]

Hart applied for Social Security disability benefits in October of 2004.[41] The Social Security Administration found Hart disabled as of February 28, 2003.[42] In the course of applying for those benefits, Hart represented to the agency that he was totally disabled.[43]

The retaliation claim centers on a letter sent in February of 2001 by Hart to Fred Pond, then President of Ridge, complaining about an ageist remark made by a Mike Slemko.[44] This letter followed a sales meeting in Puerto Vallarta, Mexico, where Slemko made the comment

"I will not hire any older people to work under me. I will be looking for younger guys."[45] Slemko became Southeast Regional Sales Manager and Hart's supervisor in April of 2001.[46] Slemko also made a remark about a need to hire young, aggressive salesmen at a meeting with a potential customer in 2002.[47] As stated above, Ridge terminated Hart effective September 10, 2004.[48] Patrick Comeau and Clifford Wells made the termination decision.[49] There is no evidence that Slemko participated in this decision.

## IV. Analysis

Because in large part the same analysis applies to Hart's termination claim based on age and his claim based on disability, I will discuss them together.

### 1. Legal standards for wrongful termination based on disability

To establish a prima facie case of wrongful discharge based on disability, a plaintiff must prove that (1) he is an individual with a disability; (2) he is otherwise qualified to perform the requirements of his job, with or without reasonable accommodations; and (3) he was terminated solely by reason

36. II Hart Dep. at 71, Hart Dep. Ex. 10.

37. ECF # 52, Attachment 2, Affidavit of Patrick Comeau ("Comeau Aff.") at ¶ 4.

38. *Id.* at ¶ 5.

39. II Hart Dep. at 71, Hart Dep. Ex. 10.

40. Comeau Aff. at ¶ 4, Wells Aff. at ¶ 9.

41. ECF # 1, Attachment 9, Complaint Ex. I.

42. *Id.*

43. I Hart Dep. at 39.

44. II Hart Dep. at 121; Comeau Aff. at ¶ 8 and Exhibit B.

45. ECF # 54, Memorandum in Opposition to Motion for Summary Judgment, Attachment 2, Exhibit 2, Affidavit of Mike Johnson; Comeau Aff. at ¶ 6.

46. Comeau Aff. at ¶ 7.

47. ECF # 54, Memorandum in Opposition to Motion for Summary Judgment, Attachment 2, Exhibit 3, Affidavit of Douglas Stack.

48. Hart Dep. Ex. 10.

49. Comeau Aff. at ¶ 4, Wells Aff. at ¶ 9.

of his disability.[50] If the plaintiff proves a prima facie case, then the burden shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for the discharge.[51] If the employer provides such a reason, then the burden shifts back to the plaintiff employee to prove that the stated reasons are pretext.[52]

### 2. Legal standards for wrongful termination based on age

To establish a prima facie case of wrongful discharge based on age, the plaintiff must show that: (1) he was at least 40 years old at the time of the discharge; (2) he was discharged; (3) he was otherwise qualified for the position; and (4) he was replaced by a younger worker.[53] If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant employer to articulate a non-discriminatory reason for the discharge.[54] If the employer provides such a reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was a pretext for age discrimination.[55]

Alternatively, an employee may show wrongful termination based on age bias by direct evidence of discriminatory statements.[56] The Sixth Circuit has identified four factors for consideration in evaluating such statements: (1) whether a decision-maker or an agent within the scope of his employment made the statement; (2) whether the statements related to the decision-making process; (3) whether the statements were more than merely vague, ambitious or isolated remarks; and (4) whether they were made proximate in time to the act of termination.[57]

Regardless of whether the proof proceeds by direct evidence or through a prima facie case and burden shifting thereafter, the plaintiff employee must prove that a causal link exists between the age discrimination and the discharge.[58]

### 3. A Social Security disability determination as a barrier to a disability or age-based wrongful termination claim

The Social Security disability insurance program provides benefits to a person with a disability so severe that he is "unable to do [his] previous work" and "cannot ... engage in any other kind of substantial gainful work which exists in the national economy." [59] Under the ADA, the plaintiff claimant must be a "qualified individual with a disability"—that is, "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment posi-

---

50. *Williams v. London Util. Comm'n*, 375 F.3d 424, 428 (6th Cir.2004).

51. *Id.*

52. *Id.*

53. *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir.2007).

54. *Id.*

55. *Id.*

56. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 477 (6th Cir.2002).

57. *Skelton v. Sara Lee Corp.*, 249 Fed.Appx. 450, 2007 WL 2859770, at *4 (6th Cir.2007); *Peters*, 285 F.3d at 477–78, *Zivkovic v. Juniper Networks, Inc.*, 450 F.Supp.2d 815, 824 (N.D.Ohio 2006).

58. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 370 (6th Cir.1998); *Hillman v. Safeco Ins. Co.*, 190 F.Supp.2d 1029, 1035 (N.D.Ohio 2002).

59. 42 U.S.C. § 423(d)(2)(A).

tion that such individual holds...."[60] Under the ADEA, the plaintiff claimant must show that he was qualified for his position at the time of termination, defined as "performing his job at a level which met his employer's legitimate expectations."[61] Where the Social Security Administration has found a plaintiff disabled by its standards, as of a time on or before the discharge date, there exists a facial inconsistency with that plaintiff's allegations that he was qualified for his position at the time of termination under either ADA or ADEA standards.

■ The Supreme Court in *Cleveland v. Policy Management Systems Corporation*[62] set out the analysis for addressing this inconsistency. In the unanimous decision, the Court analyzed the disability requirements under both the Social Security program and the ADA.[63] In particular, the Court noted that the ability of the individual to perform his job with or without reasonable accommodations is considered under the ADA but is not a consideration for purposes of Social Security disability.[64] A Social Security disability determination, therefore, will not automatically preclude a claim under the ADA.[65]

The Court went on to hold, however, that in the face of a Social Security disability determination, an ADA claimant must provide a reasonable explanation for the discrepancy between the Social Security finding and the necessary proof that he can perform the essential functions of his job with or without reasonable accommodation.

An ADA claimant bears the burden of proving that she is a "qualified individual with a disability"—that is, a person "who, with or without reasonable accommodation, can perform the essential functions" of her job. And a plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA case—at least if she does not offer a sufficient explanation. For that reason we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the SSDI total disability claim. Rather, she must proffer a sufficient explanation. * * * * [A] party cannot create a genuine issue of material fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement, by, saying, filing a later affidavit that flatly contradicts that party's earlier sworn statement without explaining the contradiction or attempting to resolve the disparity. * * * *When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with the necessary element of an ADA claim. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or

**60.** 42 U.S.C. § 12111(8).

**61.** *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 372 (6th Cir.1999).

**62.** *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999).

**63.** *Id.* at 801–05, 119 S.Ct. 1597.

**64.** *Id.* at 803–04, 119 S.Ct. 1597.

**65.** *Id.* at 804–05, 119 S.Ct. 1597.

without "reasonable accommodation." [66]

The approach adopted by the Supreme Court in *Cleveland* is consistent with the Sixth Circuit's earlier precedents [67] and has been applied by that court thereafter.[68]

The Sixth Circuit has not yet had the opportunity to consider the *Cleveland* decision in the context of the ADEA. Both the Third Circuit and the Fifth Circuit have done so, however.[69] The Third Circuit, in *Detz v. Greiner Industries, Inc.*, explained that similarities between the proofs for the ADA and the ADEA that make the approach adopted by the Supreme Court in the *Cleveland* case applicable to ADEA claims.

> While *Cleveland* only specifically addressed a conflict between SSDI and ADA claims, the analysis is not limited in its application to cases involving those particular statutory and administrative schemes. Like an assertion that one is a "qualified individual" for ADA purposes, a declaration that one is a "qualified individual" under the ADEA is a "context-related legal conclusion." Therefore, a prima facie showing under the ADEA that conflicts with earlier statements made to the SSA is subject to the same analysis, as the reasoning of the Court in Cleveland also applies in the context of the ADEA. In fact, the District Court here properly observed that "scenarios may exist in which it is possible for a plaintiff's ADEA claim to be consistent with his or her earlier application for Social Security benefits." *Detz*, 224 F.Supp.2d at 916. For example, a person who files for and is granted

SSDI benefits several months after his discharge would not be precluded from advancing a successful ADEA claim against his employer where his disability did not prevent him from working at the time of his discharge, but where it subsequently worsened to a point where he is no longer able to perform that work. It is true that these scenarios might be less common with ADEA claims than they would be with claims under the ADA, because the ADEA does not include any additional considerations for identifying "qualified individuals" that might be analogized to the "reasonable accommodation" language of the ADA. *Id.* at 915. This does not, however, render *Cleveland* any less applicable to cases involving SSDI claims followed by attempts to establish the elements of a prima facie showing under the ADEA.[70]

I agree with the Third Circuit's analysis and will, therefore, apply the analytical framework of the *Cleveland* case to both the disability and age claims made by Hart here.

### 4. Hart's wrongful termination claim based on disability

Applying the analytical approach adopted by the Supreme Court in *Cleveland,* Hart has failed to proffer a sufficient explanation for the disparity between the Social Security Administration's finding that he was disabled as of February 28, 2003 and his claim under the ADA that he could perform the essential functions of his job, with or without reasonable accommo-

---

**66.** *Id.* at 806–07, 119 S.Ct. 1597 (citations omitted).

**67.** *Griffith v. Wal–Mart Stores, Inc.*, 135 F.3d 376 (1998).

**68.** *Williams v. London Util. Comm'n*, 375 F.3d 424, 429 (6th Cir.2004).

**69.** *McClaren v. Morrison Mgmt. Specialists, Inc.*, 420 F.3d 457, 462–63 (5th Cir.2005); *Detz v. Greiner Indus., Inc.*, 346 F.3d 109, 117 (3rd Cir.2003).

**70.** *Detz,* 346 F.3d at 117.

dations, at the time of his termination on September 10, 2004.

In his deposition testimony, Hart made clear that he understood what total disability meant, that his statements to the Social Security Administration about his total disability were true, and that his physical condition has become worse over time.

Q. [By defense counsel] So tell me what totally disabled means to you, Mr. Hart?

A. [By Plaintiff] It means I'm not capable of performing work.

Q. And when you told that to the federal government in going through that process, you were telling the truth, weren't you?

A. Yeah. They tested me and they determined that.

Q. So you gave them information and told them and they agreed that you were totally disabled after doing tests, correct?

A. Yes.

Q. And since those tests were performed, has your physical condition gotten better or worse?

A. Worse.[71]

The record otherwise does not support a factual dispute as to whether Hart could perform the essential functions of his job as of the date of termination. Those functions, as identified by Hart, including devising business plans for his customers, loading Ridge's tools into his vehicle, driving to make calls on customers, and unloading and physically demonstrating the tools to the customers.[72] Hart testified

that memory problems prevent him from devising the necessary business plans.[73] He was placed under a 30–pound lifting restriction in January of 2002, which has never been removed.[74] Finally, Hart began experiencing blackouts in February of 2002 that ultimately made it unsafe for him to drive to sales calls.[75]

In his briefs, Hart makes several arguments that with accommodations he could do his job despite the 30–pound lifting limitation.[76] He argues that Ridge failed to accommodate him by providing lifting devices.[77] He also makes the argument that Ridge's policy of requiring salesmen to lift heavy tools without lifting devices generally violated OSHA regulations.[78]

These generalized arguments do not constitute sufficient proof that Hart could have done his work as a district sales manager in September of 2004 even if Ridge had supplied him with some lifting devices at the time. He offers no proof that he could prepare business plans and drive to customer locations as of that time. Rather, the evidence in the record supports the Social Security Administration's finding that as of the time predating his termination, he was totally disabled and was not capable of performing work, with or without any accommodations. Summary judgment should issue, therefore, on the wrongful termination claim based on disability.

### 5. Hart's wrongful termination claim based on age

The foregoing analysis applies with equal force to the element under the

---

**71.** I Hart Dep. at 39.

**72.** I Hart Dep. pp. 20–21, 23–26; II Hart Dep. at 65.

**73.** I Hart Dep. at 6–7, 30–31, 41.

**74.** I Hart Dep. at 29, 47, 61–62.

**75.** I Hart Dep. at 9–10.

**76.** *E.g.,* ECF # 54 at 13.

**77.** *Id.* at 19–25.

**78.** ECF # 53 at ¶¶ 5, 12, and 17; ECF # 58 at 3–5.

ADEA claim that Hart must have been qualified for his position at the time of termination. Given the record evidence regarding the essential functions of Hart's position as a district sales manager and the evidence regarding his medical condition at the time of termination, a genuine issue of material fact does not exist as to whether Hart was capable of performing his job at a level which met his employer's legitimate expectations.

In the alternative, a genuine issue of material fact does not exist as to direct evidence that Ridge terminated Hart because of his age. His direct evidence case depends upon several statements made by Slemko at times two or more years removed from the date of termination. Both of these statements were to the effect that Slemko wanted to hire or the company should hire young aggressive sales persons. Neither of the two comments was directed at Hart, and neither made reference to replacing existing sales persons with younger individuals. Furthermore, Slemko, based on the evidence in this record, was not involved in the decision to terminate Hart's employment. Applying the standards identified by the Sixth Circuit in *Peters v. Lincoln Electric Company*,[79] the evidence regarding Slemko's statements, taken in the light most favorable to Hart, do not create a genuine issue of material fact as to direct evidence of a discriminatory termination. The statements were not made by a person who made the decision to terminate Hart, did not relate to the decision-making process, were vague and isolated, and were not made proximate in time with the termination.

Further, as discussed above, even if direct evidence of age discrimination existed, Hart must still prove a causal link between that discrimination and his termination.[80] Again, viewing the facts in the light most favorable to Hart, given the undisputed evidence of Hart's medical condition at the time of his termination and his inability to perform his job at that time, a reasonable juror could not conclude that Ridge terminated Hart because of his age rather than because of his incapability of performing his job. Summary judgment, therefore, should be granted on the wrongful termination claim based on age.

## B. Wrongful termination in retaliation for a complaint of age discrimination

### 1. Legal standards for retaliatory discharge for an age discrimination complaint

To establish a prima facie case of retaliatory discharge, an employee must show that (1) he was engaged in a statutorily protected activity, (2) he suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and protected activity.[81]

If the plaintiff makes a showing sufficient to establish a prima facie case, the burden shifts to the defendant employer to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action.[82] If the defendant provides such a reason, the burden then shifts back to the plaintiff employee to show that the employer proffered reasons of pretext for unlawful discrimination.

---

**79.** *Peters,* 285 F.3d at 477–78.

**80.** *Bush,* 161 F.3d at 370.

**81.** *Bryson v. Regis Corp.,* 498 F.3d 561, 570 (6th Cir.2007).

**82.** *Id.*

 Temporal proximity between the protected activity and the adverse employment action alone is not sufficient to establish a causal connection for a retaliation claim.[83] A proximity of time of less than six months is generally required for consideration as evidence of a causal link between protected activity and retaliation.[84] In addition to requisite temporal proximity, the plaintiff must establish that he was treated differently from other employees similarly situated.[85]

### 2. Hart's retaliatory discharge claim

There is no dispute here that Hart had engaged in a protected activity, a complaint about age discrimination made to Ridge's President, or that he suffered an adverse employment action, his termination. Hart's retaliatory discharge claim turns on whether a causal connection existed between his complaint and his discharge.

No genuine issue of material fact exists regarding the absence of such a link. First, Hart made his complaint in 2001 but remained employed until 2004. Over three years transpired between the protected activity and the discharge. His claim, therefore, lacks the requisite temporal proximity. Further, even if such proximity existed, this record contains no evidence that Ridge treated Hart differently from any other employee in the context of his specific claim. He has made no showing that Ridge retained other employees whose medical condition prohibited them from performing their job responsibilities

beyond the time provided for by Ridge's policies. The Court should enter summary judgment on the retaliatory discharge claim.

### V. Conclusion

Based on the foregoing analysis, I recommend that summary judgment be issued on Hart's three remaining claims in this case—that he was wrongfully terminated because of a disability, that he was wrongfully terminated because of his age, and that he was wrongfully terminated in retaliation for making a claim of age discrimination.

As set forth below, Hart may make objections to this recommendation to Judge Nugent. He should note, however, that such objections must be based upon the evidence submitted in connection with Ridge's summary judgment motion. He may not submit new evidence not previously presented to the Court.

### Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within in the specified time waives the right to appeal the District Court's order.[86]

December 4, 2007.

---

**83.** *Clay v. United Parcel Serv., Inc.,* 501 F.3d 695, 718 (6th Cir.2007).

**84.** *Sanchez v. Caldera,* 36 Fed.Appx. 844, 846 (6th Cir.2002); *Nguyen v. Cleveland,* 229 F.3d 559, 566–67 (6th Cir.2000); *Ellison v. DaimlerChrysler Corp.,* No. 3:06cv899, 2007 WL 3171758, at *8 (N.D.Ohio, Oct. 30, 2007); *Matricardi v. Astro Shapes, Inc.,* No.

4:04cv1317, 2007 WL 2902918, at *14–15 (N.D.Ohio, Sept. 29, 2007).

**85.** *Clay,* 501 F.3d at 718.

**86.** *See United States v. Walters,* 638 F.2d 947 (6th Cir.1981). *See also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435

(1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct.    899, 88 L.Ed.2d 933 (1986).