# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 11, 2023

Lyle W. Cayce
Clerk

_____

No. 22-11140

_____

N. Sugumaran Narayanan,

*Plaintiff—Appellant*,

*versus*

Midwestern State University,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 7:21-CV-46

_____

Before King, Willett, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Appellant N. Sugumaran Narayanan appeals the district court's grant of summary judgment in favor of Appellee Midwestern State University under the Americans with Disabilities Act and Title VII. Finding that the district court did not err and properly granted summary judgment, we AFFIRM the district court's ruling on all ADA claims. Finding that the

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-11140

district court erred, we VACATE and REMAND on the Title VII claims, as described in detail herein.

## I.     Background

N. Sugumaran Narayanan began teaching at Midwestern State University ("MSU") on September 1, 2007, as an Assistant Professor. In 2013, he was granted tenure and in 2015 he was promoted to Associate Professor. In 2016, Narayanan sued MSU "for denial of a promotion based on retaliation as well as race, color, and national origin" which was settled out of court.[1]

Beginning in 2017, Narayanan began experiencing stress-related health issues including anxiety and hypertension. Narayanan requested and was granted leave to tend to these health-related issues. Once he recovered, Narayanan requested to teach summer classes for the summer 2018 session but was denied the opportunity.

On September 6, 2018, Narayanan requested a two-year leave of absence, to begin in Spring of 2019 "for good cause." In his request, Narayanan states, "I am seeking to apply for a two-year leave of absence (without compensation), for good cause, beginning the Spring semester of 2019." MSU denied the request due to the hardship it would impose on the Political Science Department, which was short-staffed at the time. Narayanan took extended leave despite the denial.

On November 28, 2018, two months after the previous request, Narayanan requested expedited advanced funding for travel to Kuala Lampur, Malaysia, to present a paper at a conference in December of that

_____

[1] In his original complaint, Narayanan asserted that his, "race, Asian, National Origin (Malaysian) and color (brown)," was a "motivating factor" for the actions of the Appellee.

year. It was on this trip that Narayanan was diagnosed with cervical spondylotic myelopathy. On January 8, 2019, just before the start of the spring semester Narayanan submitted a two-page "Documentation of Disability" form from his doctor in Malaysia saying that he "cannot fly," and giving a time frame of "at least six months," before he could resume his job functions due to a new diagnosis of cervical spondylotic myelopathy. This was the first time this condition was mentioned to MSU. The leave was granted, and Narayanan subsequently exhausted all paid and unpaid leave related to this claim.

In January 2019, Narayanan filed another complaint with the Equal Employment Opportunity Commission ("EEOC") based on retaliation for filing his 2016 suit and continued discrimination based on race, color, and national origin.[2] On January 16, 2019, MSU informed Narayanan that he would receive teaching assignments for Fall 2019. On May 13, 2019, MSU emailed Narayanan to notify him of his fall 2019 teaching assignments. Over the next few months, MSU emailed Narayanan three separate times requesting that he sign his Annual Employment Contract ("Contract"). On August 12, 2019, Narayanan emailed MSU's disability office requesting additional leave related to his cervical spondylotic myelopathy diagnosis, which he said rendered him unable to fly to MSU from Malaysia for "at least another 6 months" extending to "possibly 12 months."

On August 20, 2019, MSU responded with an Employee Individual Accommodation Plan ("Plan") that acknowledged Narayanan's disability and offered accommodations of a chair available in the teaching classroom, ergonomic office furniture, and limits on extended travel. Narayanan responded the following day, August 21, 2019, that the offered

_____

[2] The record is unclear on the exact date this EEOC complaint was filed.

accommodations were not sufficient. The same day, Narayanan responded to MSU's third email about signing his Contract stating he would sign once his Plan was finalized. MSU viewed Narayanan's failure to return this Contract, and his failure to report to campus to teach classes on August 26, 2019, as breaches of duties justifying termination. Narayanan argues that a reasonable accommodation would have allowed him to teach his classes online, while MSU believes his physical presence on campus was necessary to perform his duties. Narayanan also states that online classes were common at MSU; however, there is no record of online classes being discussed between the parties as an accommodation.

On August 28, 2019, MSU emailed Narayanan with an updated Plan, which recommended "[l]eave time unless such accommodation would have undue hardship on the functioning of the department or university." Narayanan responded to MSU the next day, August 29, 2019, asking for the "undue hardship" phrase to be removed, but he never signed the Plan. MSU emailed Narayanan later again on August 29, 2019, denying his request for up to two additional semesters of leave citing "undue hardship" and offering the same accommodations from the August 20th email. Narayanan did not offer any accommodation alternatives, and he did not report to teach his assigned fall classes.

On September 18, 2019, MSU staff informed Narayanan that it was "recommending that [his] tenure be revoked for (1) 'failure to submit a completed Disclosure of Outside Employment form as required by MSU policy 3.325 for Academic Year 2019 (even after multiple reminders) and for Academic Year 2020,'[3] and (2) 'Neglect of professional duties for failing to

_____

[3] MSU requested Narayanan return his completed disclosures for 2019 and 2020 nine times between September 2018 and January 2020. Most of that time, he was on leave. Narayanan returned the forms in January 2020.

No. 22-11140

meet your assigned classes for the 2019 Fall Semester.'" MSU's President informed Narayanan on December 9, 2019, that there was good cause to revoke his tenure and terminate employment for neglecting his professional duties. Narayanan then exercised his right to a due process hearing.

On April 6, 2020, the Due Process Committee held a virtual due process hearing and unanimously decided there was good cause to revoke Narayanan's tenure and terminate his employment.[4] Narayanan's termination became effective in May 2020 when MSU's Board of Regents ("Board") voted 8-0 to revoke his tenure and terminate employment.[5] Following his termination, Narayanan filed a charge for retaliation and continued discrimination based on race, color, and national origin against MSU with the EEOC and Texas Workforce Commission ("TWC"). He later filed a charge with the same entities based on disability discrimination and failure to accommodate. Narayanan filed his initial complaint under the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e, *et seq.*) ("Title VII") with the United

---

[4] The Due Process Committee recommended revoking Narayanan's tenure based on these reasons: (1) "[Plaintiff's] failure to return a signed contract accepting the University's offer for employment for the 2019–2020 academic year by the time of the first faculty reporting day (August 19, 2019);" (2) "[Plaintiff's] failure to report for the first day of the 2019–2020 academic year meetings (August 19, 2019) without prior notification that he would not be present;" (3) "[Plaintiff's] failure to be present on the first day of class (August 26, 2019) and failure to teach his Fall 2019 teaching assignment, in spite of being notified of his Fall 2019 teaching assignments by the Provost (January 16, 2019 and May 13, 2019);" and (4) "[Plaintiff's] failure to submit a properly completed Disclosure of Outside Employment form for Academic Years 2019 and 2020 at the time of request."

[5] Of note, Narayanan's initial suit named the Board as an additional defendant. The Board was subsequently dismissed without prejudice. MSU argues that because the Board was dismissed, the ADA claims are moot. Narayanan briefs the ADA issue without addressing the mootness claim.

No. 22-11140

States District Court for the Northern District of Texas on June 22, 2021. On June 20, 2022, MSU filed a motion for summary judgment which was subsequently granted on October 24, 2022. Narayanan timely filed his Notice of Appeal on November 18, 2022.

## II.    Standard of Review

We review the grant of summary judgment de novo and draw every reasonable inference in Narayanan's favor. *Newbold v. Operator, L.L.C.*, 65 F.4th 175, 178 (5th Cir. 2023) (citation omitted); *Hudson v. Lincare, Inc.*, 58 F.4th 222, 228 (5th Cir. 2023) (citation omitted). Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine [dispute] of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017) (citation omitted).

However, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). A party opposing summary judgment "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "[C]onclusory allegations" and "unsubstantiated assertions" will not suffice. *Id.* (citations omitted). "We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.*

No. 22-11140

## III.    Discussion

We address three points regarding the district court's opinion below: 1) the ADA claims, 2) the Title VII Discrimination claim, and 3) the Title VII Retaliation claim.

### A.  The Americans with Disabilities Act Claims

The district court properly granted summary judgment regarding the ADA claims for failure to accommodate, discrimination, and retaliation.[6]

### 1.  ADA - Failure to Accommodate Claim

We have frequently recognized that a claimant must prove that "he is a person who, with or without reasonable accommodation, can perform the essential functions of his employment position." *Turco v. Hoechst Celanese Corp.,* 101 F.3d 1090, 1093 (5th Cir. 1996). *See also E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014). For a failure to accommodate claim to be successful, Narayanan must prove: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. La., Dep't of Justice, Off. of the Att'y Gen.*, 730 F.3d 450, 452 (2013).

---

[6] In addition to the ADA claim, Narayanan brings failure to accommodate claims under Chapter 21 of the Texas Labor Code and § 504 of the Rehabilitation Act.  We have consistently found that the only difference in these claims is causation which can be found to be immaterial. *Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454-55 (5th Cir. 2005) ("The question is whether the failure to accommodate the disability violates the ADA; and the existence of a violation depends on whether under both the Rehabilitation Act and the ADA, the demanded accommodation is in fact reasonable and therefore required."); *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 287-88 (5th Cir. 2005) ("[W]hen ADA claims are directed at architectural barriers[] the rights and remedies are exactly the same as those provided under the Rehabilitation Act. This circuit, as well as others, has noted that, because the rights and remedies under both statutes are the same, case law interpreting one statute can be applied to the other.").

"The ADA prohibits covered employers from 'discriminat[ing] against a qualified individual on the basis of disability.' Discrimination includes failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship.'" *Id.* (citations omitted). The district court assumed for its analysis that Narayanan was a qualified individual, and the parties do not dispute that Narayanan had a disability that was known to the university. The only question is whether MSU failed to make reasonable accommodations.

In the instant case, MSU offered accommodations of a chair available in the teaching classroom, ergonomic office furniture, and limits on extended travel. While Narayanan initially told MSU the accommodations were insufficient and requested an additional leave of six to twelve months, he did not respond to the second offer of the same accommodations. Narayanan also failed to show that the offered accommodations were insufficient, and he did not offer any reasonable alternative. An exception to the ADA requirement of providing a qualified individual with reasonable accommodations exists if the requested accommodations would cause an undue hardship. *Groff v. DeJoy*, 600 U.S. 447, 453-73 (2023). Specifically, as cited by the district court, "[u]ndue hardship exists when an employer is required to bear more than a de minimis cost." *Antoine v. First Student, Inc.*, 713 F.3d 824, 839 (5th Cir. 2013) (citation omitted). MSU argues that the indefinite leave request is an undue hardship, and it was thus exempt from providing Narayanan with more leave. We have frequently recognized that indefinite leave requests lacking a return date, like Narayanan requested, qualifies as an undue hardship and does not violate ADA standards. *Rogers v. Int'l Marine Terminals*, 87 F.3d 755, 759–60 (5th Cir. 1996); *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016); *Reed v. Petroleum Helicopters, Inc.,* 218 F.3d 477, 481 (5th Cir. 2000). In addition, MSU was

forced to cancel classes last minute and "scramble" to find additional staff. Therefore, we affirm the district court's opinion on the ADA failure to accommodate claims.

### 2. ADA – Discrimination and Retaliation Claims

A prima face case for discrimination can be established by direct or indirect evidence. *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 162 (5th Cir. 1996). If indirect evidence is used, the Court applies the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). A plaintiff must show that: "1) he or she suffers from a disability; 2) he or she is qualified for the job; 3) he or she was subject to an adverse employment action; and 4) he or she was replaced by a non-disabled person or was treated less favorably than non-disabled employees." *Cortez v. Raytheon Co.,* 663 F. Supp. 2d 514, 525 (N.D. Tex. 2009) (citations omitted). The parties agree that Narayanan suffers from a disability. As discussed above, the district court assumed Narayanan was qualified for the job. His termination was an adverse employment action. As the district court noted, Narayanan presents no evidence that he was either replaced by a non-disabled person or was treated less favorably than a non-disabled person. Since there was a legitimate, non-discriminatory reason to terminate Narayanan, his ADA discrimination and retaliation claims have no merit. Therefore, we affirm the district court's opinion on the ADA discrimination and retaliation claims.

### B. Title VII Discrimination Claim

With regard to Narayanan's Title VII discrimination claim, the district court held that he did not show he suffered an adverse employment action because "failure to grant [his] desired summer teaching assignments does not rise to level of an 'ultimate employment decision.'" In *Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023) (en banc), we ruled that the "ultimate employment decision" language had no basis in Title VII:

Today we hold that a plaintiff plausibly alleges a disparate-treatment claim under Title VII if she pleads discrimination in hiring, firing, compensation, or the "terms, conditions, or privileges" of her employment. She need not also show an "ultimate employment decision," a phrase that appears nowhere in the statute and that thwarts legitimate claims of workplace bias.

*Id.* at 497.

Our decision "made clear that Title VII requires a broader reading than our 'ultimate employment decision' line of cases permitted and thus 'end[ed] that interpretative incongruity' by removing the requirement." *Harrison v. Brookhaven Sch. Dist.*, No. 21-60771, 2023 WL 6158232, at *1 (5th Cir. Sept. 21, 2023) (citing *Hamilton*, 79 F.4th at 497). Additionally, here, the district court did not consider the lost income Narayanan experienced from MSU denying him the opportunity to teach summer classes. Lost income can qualify as compensation under both the pre- and post-*Hamilton* interpretation of "ultimate employment decision" and "terms, conditions, or privileges of employment" if that lost income can be shown to be a significant source of income. *Hamilton*, 79 F.4th at 497, 501-04; *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 72-73 (2006) (holding that an employee being forced to go 37 days without pay was materially adverse); *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.,* 261 F.3d 512, 523 (5th Cir. 2001) (holding that a $2500 discontinued stipend qualifies as a compensation decision); *Pegram v. Honeywell*, Inc., 361 F.3d 272, 284 (5th Cir. 2004) (reasoning that the appellant's lost compensation from incentives should have been considered and summary judgment was thus inappropriate) (abrogated by *Hamilton*, 79 F.4th 494). Hence, the district court should also consider the income Narayanan lost from his denial of summer teaching assignments. Accordingly, we remand this issue to the district court to

reconsider Narayanan's Title VII discrimination claims in light of our recent en banc decision in *Hamilton*.

## C.  Title VII Retaliation Claim

With regard to Narayanan's Title VII retaliation claim, the district court erroneously applied the "ultimate employment decision" standard which was mandated only for discrimination claims rather than the materially adverse standard as required under *Burlington*. 548 U.S. at 72-73.  The court held that "failure to grant Plaintiff desired summer teaching assignments does not rise to [] level of an 'ultimate employment decision.'"

Applicable to the instant case, however, *Burlington* holds that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.*; *see also Hudson*, 58 F.4th at 231 (applying the materially adverse standard and finding that appellant did not suffer an adverse employment action sufficient to create a Title VII retaliation claim); *Mota*, 261 F.3d at 521-23 (reasoning that the denial of both paid leave and a one-year unpaid leave was a violation of the Title VII antiretaliation provision and amounted to an adverse employment action); *McCoy v. City of Shreveport,* 492 F.3d 551, 556-61 (5th Cir. 2007) (applying the materially adverse standard and finding that the appellant did not prove that a reasonable person might be dissuaded from making or supporting a discrimination charged); *Wheat v. Florida*, 811 F.3d 702, 708-09 (5th Cir. 2016) (denying employee a planned pay raise did not rise to a materially adverse action); *Holloway v. Dep't of Veterans Affs.*, 244 F. App'x 566, 567 (5th Cir. 2007) ("Instead of the 'ultimate employment decision' standard, the Supreme Court held that an employee suffers an adverse employment action if 'a reasonable employee would have found the challenged action materially adverse, which in this

context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" (quoting *Burlington*, 548 U.S. at 68)).

In addition, the district court should consider the lost income Narayanan incurred when MSU denied his request to teach summer classes. *Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 292, (1960) ("[I]t needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions.").

## IV.    Conclusion

Accordingly, we AFFIRM the judgment of the district court regarding the ADA claims. We VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion regarding the Title VII claims.